UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW WOODS,                    )
                                 )
           Plaintiff,            )
                                 )        No. 17 C 4339
      v.                         )
                                 )        Chief Judge Rubén Castillo
AMAZON.COM, LLC et al.,          )
                                 )
           Defendants.           )

## MEMORANDUM OPINION AND ORDER

Andrew Woods ("Woods") and Michael Johnson ("Johnson") (collectively, "Plaintiffs")

bring separate but related personal injury actions against Amazon.com, LLC ("Amazon"), Duke

Realty Limited Partnership ("Duke"), and Steel King Industries, Inc. ("Steel King")

(collectively, the "Defendants"). (17-cv-4339 [hereinafter '4339], R. 141, Third Am. Compl.;

17-cv-7335 [hereinafter '7335], R. 106, Second Am. Compl.) Defendants bring third-party

claims against Lakeside Rack Installers, Inc. ("Lakeside"), and Amazon has filed cross-claims

against Steel King and Duke, all of which arise out of the events alleged in Plaintiffs' personal

injury actions. ('4339, R. 44, Cross-cl.; *id.*, R. 45, Third Party Compl.; *id.*, R. 46, Third Party

Compl.; *id.*, R. 92, Cross-cl.; *id.*, R. 138, Am. Third Party Compl.; '7335, R. 33, Third Party

Compl.; *id.*, R. 42, Cross-cl.; *id.*, R. 43, Cross-cl.; *id.*, R. 57, Third Party Compl.; *id.*, R. 103,

Am. Third Party Compl.) Before the court are motions in limine ("MILs") filed by Plaintiffs,

Defendants, and Lakeside. For the reasons stated below, the MILs are granted in part and denied

in part as set forth herein.

## BACKGROUND

In brief, Plaintiffs allege that Duke's, Amazon's, and Steel King's negligence caused the injuries Plaintiffs sustained on a construction project when a forklift crashed into a structure, causing the structure to collapse on Plaintiffs. ('4339, R. 141, Third Am. Compl. ¶¶ 11-68; '7335, R. 106, Second Am. Compl. ¶¶ 11-68.) The structure at issue was a steel shelving rack Plaintiffs were building inside a newly-constructed warehouse that would serve as an Amazon distribution center. (*See* '4339, R. 150, Answer ¶¶ 12-13; *id.*, R. 303, Resp. to Def.'s Facts ¶¶ 8-10, 14; '7335, R. 114, Answer ¶¶ 12-13; *id.*, R. 265, Resp. to Def.'s Facts ¶¶ 8-10, 14.)

Plaintiffs claim that the structure collapsed because of unsafe practices and a rushed schedule on the construction project, which they allege was controlled by Amazon, Duke, and Steel King. ('4339, R. 141, Third Am. Compl. ¶¶ 8-68; '7335, R. 106, Second Am. Compl. ¶¶ 8-68.) Steel King, Duke, and Amazon have all filed third-party complaints for contribution against Lakeside. ('4339, R. 45, Third Party Compl. ¶¶ 5-12; *id.*, R. 46, Third Party Compl. ¶¶ 5-12; *id.*, R. 138, Am. Third Party Compl. ¶¶ 3-11; '7335, R. 103, Am. Third Party Compl. ¶¶ 3-11; *id.*, R. 57, Third Party Compl ¶¶ 4-12; *id.*, R. 33, Third Party Compl. ¶¶ 4-12.) Amazon has filed cross-claims against Duke and Steel King seeking contribution from them in the event Amazon is liable. ('4339, R. 44, Cross-cl. ¶¶ 1-7; *id.*, R. 92, Cross-cl. ¶¶ 3-7; '7335, R. 42, Cross-cl. ¶¶ 3-7; *id.* R. 43, Cross-cl. ¶¶ 3-7.) The trials in Plaintiffs' cases are both scheduled to begin on June 10, 2019. ('4339, R. 128, Min. Entry; '7335, R. 95, Min. Entry.) In advance of the upcoming trials, numerous MILs have been filed by all of the parties. ('4339, R. 168-207, 210-18; '7335, R. 132-77, 179-80, 182.) These MILs are fully briefed and ripe for resolution.

## LEGAL STANDARDS

Trial courts have considerable discretion to manage the submission of evidence, including granting motions in limine. *See Luce v. United States*, 469 U.S. 38, 41 (1983); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). In limine rulings serve "to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Such motions are not favored, however, and the Court should grant a motion in limine only when the evidence at issue "is clearly inadmissible on all potential grounds." *Gomez v. Palmer*, No. 11 C 1793, 2016 WL 212800, at *1 (N.D. Ill. Jan. 19, 2016). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy[,] and potential prejudice may be resolved in proper context." *United States v. Lillie*, 669 F. Supp. 2d 903, 905 (N.D. Ill. 2009) (quotation omitted). Additionally, the Court has authority to reconsider its rulings on motions in limine as "the case unfolds." *Luce*, 469 U.S. at 41. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42; *see also Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) ("[T]he district court may adjust a motion in limine during the course of a trial."). "The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose." *U.S. Sec. & Exch. Comm'n v. Berrettini*, No. 10-CV-1614, 2015 WL 4247776, at *1 (N.D. Ill. July 14, 2015).

Under Federal Rule of Evidence 401, evidence is deemed relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401(a)-(b). Under Federal Rule of Evidence 403, the Court has authority to exclude relevant evidence if its "probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## ANALYSIS

All unopposed MILs are granted to the greatest extent they do not conflict with the Court's more specific evidentiary rulings in this order, as those more specific evidentiary rulings control and override any stipulations between the parties regarding the admissibility of evidence.[1] *See, e.g., Berrettini*, 2015 WL 4247776, at *2 (granting unopposed MIL); *see also Gomez*, 2016 WL 212800, at *9 (same). With this in mind, the Court addresses only those MILs that are objected to by any of the parties.

## I.     Defendants' MILs in *Woods*

### A.     Insurance

Pursuant to Federal Rule of Evidence 411, Defendants and Lakeside move to bar evidence of and reference to the fact that they are or might be insured against liability. ('4339, R. 171, Mot. at 2-3; *id.*, R. 172, Mot. at 1-2; *id.*, R. 192, Mot. at 2; *id.*, R. 195, Mot. at 1-2.) Woods argues that the parties dispute which Defendant was in control of the construction project, and that when "control is at issue[,] Rule 411 permits . . . evidence of liability insurance when the evidence is relevant to control." (*Id.*, R. 232, Resp. at 2.)

This case is a negligence case, and "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." FED. R. EVID. 411; *see also King v. Harrington*, 447 F.3d 531, 533 (7th Cir. 2006) ("Because the paramount question before the jury was one of negligence, evidence of [the

---

[1] This includes MILs to which a party filed a response but did not state or develop any objection. (*See, e.g.*, '4339, R. 288, Resp. at 1-2 (Steel King stating in its response that it has no intention of offering evidence or commentary of the type that Woods asks the Court to bar in an MIL).)

defendant's] insurance was not admissible absent a showing . . . that [the plaintiffs] intended to use the information for some alternate purpose set forth in the second sentence of Rule 411."). The Court concludes that evidence of or reference to the Defendants' insurance is inadmissible under Rule 411. *See id.* The Court also finds that such evidence is irrelevant and that even if it was relevant, any relevance would be substantially outweighed by a danger of unfair prejudice, confusing the issues, or wasting time. *See* FED. R. EVID. 401(a)-(b), 402-03, 411.

"But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." FED. R. EVID. 411. The Court's conclusion, therefore, might change depending on what occurs at trial and the different contexts in which evidence of Defendants' insurance might be admissible that are not apparent at this time. *See, e.g., Alexander v. Mount Sinai Hosp. Med. Ctr. of Chi.*, No. 00 C 2907, 2005 WL 3710369, at *3 (N.D. Ill. Jan. 14, 2005) ("The purpose of this type of evidence can be better addressed in the fuller framework of trial."); *Fid. Nat. Title Ins. Co. of N.Y. v. Intercounty Nat. Title Ins. Co.*, No. 00 C 5658, 2003 WL 2005233, at *2 (N.D. Ill. Apr. 30, 2003) ("Although the Intercounty defendants' argument tracks the language of the rule, they fail to offer evidence that Fidelity made any statement to its insurance carrier bearing on the issue of control over the escrow accounts."). The Court, therefore, grants the MILs related to evidence of or reference to Defendants' liability insurance with the caveat that Woods may present such evidence if he lays an adequate foundation that such evidence is relevant to proving bias, agency, ownership, or control. *See* FED. R. EVID. 411.

**B.    Voir Dire**

Defendants filed a number of MILs related to the Court's questions directed to potential jurors during jury selection. ('4339, R. 172, Mot. at 3, 10-11; *id.*, R. 192, Mot. at 3-4, 15-16; *id.*,

R. 195, Mot. at 3, 11.) The Court has its own procedures for jury selection and jury instructions, to be discussed at the pretrial conference or some other time before trial, that will resolve any disputes related to jury selection and jury instructions. Therefore, these MILs are denied.

### C.     References to a Failure to Agree or Stipulate to Matters in Controversy

Defendants, without providing any context, move to bar "any reference or suggestion to the effect that a party may have failed to agree or stipulate to a matter in controversy." (*Id.*, R. 172, Mot. at 8; *id.*, R. 192, Mot. at 13; *id.*, R. 195, Mot. at 8.) The Court denies these MILs because they are too broad, and Defendants present no valid reason why such evidence is inadmissible on all potential grounds. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

### D.     Evidence of Pain and Suffering

Defendants move to exclude all evidence regarding Woods' "pain and suffering except that which could be testified to by [Woods] himself." ('4339, R. 172, Mot. at 8-9; *id.*, R. 192, Mot. at 11-12; *id.*, R. 195, Mot. at 9.) These MILs are also too broad, and Defendants again fail to provide any adequate reason or legal authority showing why evidence of pain and suffering that could be testified to by persons other than Woods is inadmissible for all purposes. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905. Steel King argues that such evidence might rise to the level of hearsay or speculation, ('4339, R. 192, Mot. at 11-12), but that is a matter best decided at trial where the Court will have more context to determine whether certain evidence of pain and suffering is hearsay or speculation. *Lillie*, 669 F. Supp. 2d at 905. Accordingly, the Court denies the MILs related to evidence of pain and suffering.

### E.     Testimony of Woods' Treating Physicians

Defendants have filed MILs to limit Woods' treating physicians to testimony about the treatment they rendered to Woods. ('4339, R. 172, Mot. at 9; *id.*, R. 192, Mot. at 12; *id.*, R. 195,

Mot. at 10.) These MILs are denied as overly broad and because Defendants fail to provide any reason or legal authority that supports this broad request. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

### F. Witness Credibility

Amazon and Duke argue that the Court should bar Woods from presenting any evidence or commentary about the credibility of Defendants, Defendants' employees, or Defendants' witnesses. ('4339, R. 172, Mot. at 6-7; R. 195, Mot. at 7.) Woods argues that these MILs are overbroad and premature. (*Id.*, R. 237, Resp. at 2.) The Court agrees with Woods—questions and testimony that challenge a witness' credibility are relevant and appropriate for the jury's consideration. *See Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 826 (7th Cir. 2005) (finding that "it was appropriate for the jury to receive" evidence that put a witness' "credibility to the test"). While the credibility of witnesses is a matter for the jury to determine, Woods is allowed to ask questions and present evidence concerning the credibility of Defendants' witnesses and employees. *See id.*; *see also* FED. R. EVID. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."). There is no basis here to bar all questions or commentary about a witness' credibility, and, as a result, Amazon's and Duke's MILs are denied.

### G. Commentary on Witnesses in Defendants' Control Not Called to Testify

Amazon and Duke move to: (1) bar Woods from "arguing or implying that a Defendant is hiding evidence when choosing not to call a particular witness"; and (2) preclude Woods from arguing that a decision not to call a witness outside of a Defendant's control "reflects poorly" on the Defendant's case. ('4339, R. 172, Mot. at 10; *id.*, R. 195, Mot. at 10.) The first request in these motions is granted, but the Court will not preclude Woods from arguing that there are

deficiencies in Defendants' case because of the absence of certain evidence. *See Cooper v. Dailey*, No. 07 C 2144, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012) ("It would be improper for Plaintiffs to insinuate without evidentiary support that Defendants are purposefully attempting to hide evidence or a witness, particularly since Plaintiffs bear the burden of proving their case. However, the Court is not barring Plaintiffs from arguing that there are deficiencies in Defendants' case due to the absence of testimony by certain individuals or the absence of certain evidence."); *see also Sommerfield v. City of Chicago*, No. 08 C 3025, 2014 WL 12802632, at *1 (N.D. Ill. Mar. 18, 2014) (reaching the same conclusion). The second request in these motions is granted as unopposed. *See Berrettini*, 2015 WL 4247776, at *2; *Palmer*, 2016 WL 212800, at *9. Woods only objects to the MILs to the extent they ask to preclude him from commenting on Amazon's or Duke's failure to call witnesses to testify that are within Amazon's or Duke's control. ('4339, R. 238, Resp. at 2-3.) The Court, however, has decided above that it will allow Woods to comment on the absence of certain evidence. *See Cooper*, 2012 WL 1748150, at *4. Accordingly, Amazon's and Duke's MILs related to a Defendant's failure to call certain witnesses are granted as set forth herein.

## H.    Undisclosed Opinions or Testimony

Defendants ask the Court to exclude any evidence or testimony that was not disclosed in discovery. ('4339, R. 172, Mot. at 7; *id.*, R. 192, Mot. at 10; *id.*; R. 195, Mot. at 7.) Woods agrees that undisclosed evidence and testimony should be excluded but argues that he may bring up testimony or opinions that were not disclosed to impeach a witness. (*Id.*, R. 239, Resp. at 2.) The Court grants Defendants' MILs related to undisclosed opinions or testimony, *see Berrettini*, 2015 WL 4247776, at *2; *Palmer*, 2016 WL 212800, at *9, and defers ruling on Woods' request

to allow impeachment using undisclosed opinions or testimony because it is dependent on what occurs at trial. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

### I.      Commentary on Defendants' Failure to Retain Medical Expert

Defendants move to bar Woods from commenting on their failure to retain an expert witness to rebut Woods' medical expert witnesses, and they argue that any such commentary would improperly shift the burden of proof to Defendants. ('4339, R. 172, Mot. at 11-12; *id.*, R. 192, Mot. at 13; *id.*, R. 195, Mot. at 11-12.) These MILs are denied because the Court cannot conclude at this time that any commentary on Defendants' failure to call a witness is improper. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905. As noted above, Woods may comment on deficiencies in Defendants' case due to the absence of certain evidence. *See, e.g.*, *Cooper*, 2012 WL 1748150, at *4. Accordingly, Defendants' MILs are denied. The Court, however, cautions Woods that any veiled attempts to shift the burden of proof to Defendants are improper.

### J.      Commentary on the Burden of Proof

Defendants ask the Court to bar Woods from referencing the burden of proof in a criminal case or comparing the burden of proof in a criminal case to the burden of proof in civil cases. ('4339, R. 172, Mot. at 11-12; *id.*, R. 192, Mot. at 13; *id.*, R. 195, Mot. at 12.) In response, Woods argues that there is no harm in explaining to the jury that the burden of proof in this case is different than the burden of proof in a criminal case. (*Id.*, R. 242, Resp. at 2-3.) This motion is denied because the Court will instruct the jury on the applicable burden of proof. Woods may comment on the burden of proof in a manner that does not conflict with the Court's jury instructions, which includes any comment that the preponderance of the evidence standard is different than a standard requiring proof beyond a reasonable doubt. *See Bredar v. Holland*

*Ladder & Mfg. Co.*, No. 05 C 4707, 2007 WL 2128358, at *2 (N.D. Ill. July 20, 2007) ("[N]either party should be 'instructing' the jury in that fashion. [D]efendants (and plaintiff) may advise the jury about the burden of proof and its meaning in conformity with the standard civil instructions on the subject."); *see also Cianfaglione v. Rogers*, No. 10-CV-02170, 2012 WL 1982536, at *2 (C.D. Ill. June 4, 2012) (allowing the plaintiff to distinguish between the burden of proof in a criminal case versus a civil case, consistent with the court's instruction).

### K.     Woods' Mental and Emotional Condition

Amazon asks the Court to bar lay witnesses from testifying about Woods' mental and emotional condition that resulted from his injuries. ('4339, R. 175, Mot. at 1-2.) This motion asks the Court to exclude potentially admissible testimony because lay witnesses are permitted to testify about their personal observations as to how Woods' emotional condition changed after he was injured on the project. *See* FED. R. EVID. 602, 701; *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) ("[P]ersonal knowledge includes opinions and inferences grounded in observations or other first-hand experiences."). The Court defers ruling on this issue until trial, and therefore Amazon's MIL related to testimony about Woods' mental and emotional condition is denied.

### L.     "Speculative Testimony"

Amazon and Duke move to exclude "speculative testimony," claiming that "there have been multiple witnesses who have attempted to provide [such testimony.]" ('4339, R. 182, Mot. at 1-3; *id.*, R. 196, Mot. at 1-2.) Whether certain testimony is speculative depends on the context of that testimony at trial and whether a party lays an adequate foundation for the testimony. *See, e.g., Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, No. 09-CV-4008, 2012 WL 3204994, at *8 n.11 (N.D. Ill. Aug. 3, 2012) (ruling that evidentiary objections related to speculation were

best ruled on at trial where the court would have further context on the specific testimony that is objected to as speculative); *Novogroder/San Bernardino, L.L.C. v. Cohen Realty Servs., Inc.*, No. 98 C 7484, 2000 WL 556621, at *9 (N.D. Ill. May 4, 2000) (denying as "premature" an MIL based on an objection that evidence was speculative). These MILs, therefore, are denied.

## M. Testimony about Contract Interpretation

Defendants argue that the Court should preclude Woods, his counsel, and any witness from offering argument or evidence regarding the interpretation of contractual terms "and/or responsibilities on [the] job site based on the contracts[.]" ('4339, R. 184, Mot. at 1; *id.*, R. 192-11, Mot. at 2; *id.*, R. 201, Mot. at 1-3.) Woods does not object to exclusion of evidence related to interpretation of the parties' contracts, but he does object to the MILs' breadth and their attempt to bar evidence or arguments regarding the parties' responsibilities on the construction site. (*Id.*, R. 245, Resp. at 2-3.)

The interpretation of a contract is a question of law that should not be submitted to a jury; however, the content of the parties' contracts and how the parties performed their contracts are issues of fact properly presented to a jury. *See, e.g., Fed. Deposit Ins. Corp. v. Chi. Title Ins. Co.*, No. 12-CV-05198, 2017 WL 3592736, at *5 (N.D. Ill. Aug. 21, 2017) ("[I]f the employees testify, based on their own perceptions and experiences, about the practices and procedures those employees followed at the [defendants] and the content of contractual provisions employed by the [defendants], that may be fact testimony (and not opinion or expert testimony at all) and thus not within the purview of Rules 701 and 702."); *Covinsky v. Hannah Marine Corp.*, 903 N.E.2d 422, 429 (Ill. App. Ct. 2009) (observing that contractual interpretation is a legal question, but the question of how a party was terminated under a contract is a question of fact). Because this is a negligence case and not one involving breach of contract, Woods may offer evidence concerning

the parties' contracts for reasons unrelated to contractual interpretation. (*See* '4339, R. 141, Third Am. Compl.) Accordingly, the Court denies Defendants' MILs related to contract interpretation and defers ruling on this issue until trial where the Court can better ascertain whether specific testimony improperly opines on matters of law or is fact testimony.

### N.    Evidence Related to Documents Not Produced

The next contested MIL is Duke's MIL to exclude evidence that was not produced in discovery. (*Id.*, R. 195, Mot. at 8-9; *id.*, R. 246, Resp. at 2.) Duke does not point to any specific evidence that it claims should be excluded and cites Illinois rules of procedure in support of its motion. (*Id.*, R. 195, Mot. at 8-9.) This request is denied because "Federal Rule of Civil Procedure 37, not a motion *in limine,* is the appropriate vehicle for excluding evidence that was improperly not produced in discovery." *Sabratek Liquidating LLC. v. KPMG LLP.*, No. 01 C 9582, 2003 WL 22715820, at *3 (N.D. Ill. Nov. 18, 2003). If Woods attempts to introduce evidence not produced in discovery, Defendants must raise an objection pursuant to Rule 37 so that the Court can weigh the factors that must be considered before the Court excludes evidence as a sanction under Rule 37. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (listing the factors that courts must weigh before excluding evidence pursuant to Rule 37).

### O.    Non-Expert Medical Opinions

Defendants move to bar Woods from "testifying as to any opinions or hearsay evidence regarding any medical conditions, diagnoses, or medical opinions concerning his alleged injuries or any type of other medical condition which would be within the knowledge and scope of a treating physician." ('4339, R. 172, Mot. at 9; *see also id.*, R. 192-6, Mot. at 2; *id.*, R. 195, Mot. at 9.) This motion sweeps in too much evidence that is potentially admissible under Rule 701, which permits lay witnesses to offer testimony "(a) rationally based on the witness's perception;

(b) helpful to . . . determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge[.]" FED. R. EVID. 701; *see also Joy*, 192 F.3d at 767. Accordingly, the Court denies Defendants' MILs and will decide at trial whether lay witnesses are offering testimony that is inadmissible hearsay or opinion testimony.

**P.      Lay Testimony on the Ultimate Issue of Whether Defendants Were "Negligent"**

Amazon and Duke argue that the Court should bar any lay witness from testifying that Defendants were "negligent" or from opining on the ultimate issue of negligence in this case. ('4339, R. 172, Mot. at 9; *id.* R. 195, Mot. at 10.) "The Federal Rules of Evidence limit—but do not bar—lay witnesses' ability to testify as to their opinions and inferences, even about ultimate issues in the case." *United States v. Locke*, 643 F.3d 235, 239 (7th Cir. 2011). Whether to allow a lay witness to opine on an issue "is committed to the district court's discretion," and depends on whether the lay opinion will help clarify the witness' testimony or determine a fact in issue. *United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008). Lay witness opinions on an ultimate issue, however, are often unhelpful to the jury. *See United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) ("We have held repeatedly that lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury[.]"); *Tarpoff v. United States*, No. 09-CV-00411 DRH, 2011 WL 1205731, at *3-4 (S.D. Ill. Mar. 10, 2011) (excluding lay opinion on an ultimate issue in the case because such testimony would not help the jury). With this in mind, the Court grants these MILs and bars any lay witness testimony opining that Defendants were "negligent," because any such testimony will not help the jury and "unnecessarily invade[s] the province of the jury which must make the . . . determination based on its assessment of the evidence." *Williams v. Mary Diane Schwarz, P.A.*, No. 15 C 1691, 2018 WL 2463391, at *8 (N.D. Ill. June 1, 2018); *see also Noel*, 581 F.3d at 496 (observing that "[o]nce the evidence is presented, the

13

jury is capable of examining it" and that "it does not need lay testimony to assist in making" a determination).

### Q.     Personal Beliefs on Credibility

Defendants move to prohibit all counsel in this case from "expressing their own personal belief on issues or to vouch for the credibility of witnesses." ('4339, R. 172, Mot. at 12; *id.*, R. 192, Mot. at 14; *id.*, R. 195, Mot. at 13.) Woods acknowledges that counsel is prohibited from expressing a personal opinion about a particular witness' credibility. (*Id.*, R. 249, Resp. at 2.) Woods argues, however, that the MILs are too broad because they ask the Court to prohibit any argument from Woods' counsel about what the evidence has shown. (*Id.*) The Court does not interpret the MILs as seeking to prohibit argument about what the evidence shows. The Court, therefore, grants the MILs and bars counsel from expressing their own personal beliefs or "vouching" for a witness' credibility if counsel's statements do not reflect reasonable inferences from the evidence adduced at trial. *See United States v. Jones,* 889 F.3d 876, 881 (7th Cir. 2018) (explaining that it is improper for an attorney to express her personal beliefs about a matter if it does not reflect "reasonable inferences from the evidence adduced at trial rather than personal opinion" (quotation omitted)).

### R.     Reference to What a Reasonable Person Would Pay to Avoid the Accident

Next, Defendants seek to exclude evidence or argument concerning what a reasonable person would pay to prevent the accident that occurred in this case. ('4339, R. 174, Mot. at 1-2; R. 192-9, Mot. at 1-2; *id.* R. 200, Mot. at 1-2.) Defendants argue that such evidence is irrelevant and, alternatively, if it is relevant, any relevance is substantially outweighed by a danger of unfair prejudice or confusing the issues. (*Id.*, R. 174, Mot. at 2; R. 192-9, Mot. at 1-2; *id.*, R. 200, Mot. at 1-2.) Woods objects to the MILs, as he intends to present evidence showing that

Defendants could have prevented the accident with minimal burden or expense. (*Id.*, R. 250, Resp. at 2-3.) This evidence is relevant and not so prejudicial as to outweigh its probative value; therefore, Defendants' MILs are denied. *See, e.g.*, *Miller v. Ill. Cent. R.R. Co.*, 474 F.3d 951, 957 (7th Cir. 2007) (applying Illinois law and explaining that "[i]f the cost . . . of a precaution that would have averted the accident would have been less than the cost of an accident, if it occurred, discounted (multiplied) by the probability . . . that it would occur, the [defendant] was negligent.").

**S.      Punitive Damages and References to Defendants' Wealth**

Defendants bring MILs to bar any evidence of punitive damages, and they also move to bar reference to their wealth or Woods' poverty because such evidence would "improperly arouse the sympathy of the jury." ('4339, R. 186, Mot. at 1; *id.*, R. 187, Mot. at 2; *id.*, R. 192-7, Mot. at 2-3; *id.*, R. 203, Mot. at 1-2.) Duke also asks the Court to prohibit any comment or argument that the jury should "send a message" to the Defendants by awarding Woods punitive damages. (*Id.*, R. 195, Mot. at 13.)

"Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 634 (7th Cir. 2018) (quotation omitted); *see also Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 1853090, at *6 (N.D. Ill. May 21, 2012) ("[T]he danger of its probative value being outweighed by its unfairly prejudicial impact is particularly high where a plaintiff references a defendant's financial status for the purpose of invoking the jury's sympathy by conjuring a David versus Goliath scenario."). Under Illinois law, however, a defendant's financial status is relevant to the assessment of punitive damages. *Powers v. Rosine*, 956 N.E.2d 583, 586 (Ill. App. Ct. 2011); *see also Deal v. Byford*, 537 N.E.2d

267, 272 (1989) (noting that the financial status of a defendant is a "relevant consideration to be weighed by the judge or jury in determining an appropriate award of punitive damages"). Because punitive damages are at issue in this case and Defendants' financial status is relevant to that issue, the Court denies Defendants' MILs to exclude evidence or references about Defendants' wealth. *See Powers*, 956 N.E.2d at 586. Evidence of Woods' poverty, however, is irrelevant and prejudicial and will be excluded. *See* FED. R. EVID. 402-03.

The Court will give a limiting instruction to the jury advising that it can only consider evidence of Defendants' wealth in determining punitive damages. *See, e.g., Case v. Town of Cicero*, No. 10 C 7392, 2013 WL 5645780, at *4 (N.D. Ill. Oct. 16, 2013) ("Limiting instructions are . . . appropriate to advise a jury that a defendant's financial condition can only be considered in assessing the amount of punitive damages."); *Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2010 WL 10076449, at *4 (N.D. Ill. Nov. 22, 2010) (noting use of limiting instruction to minimize risk of prejudice to the defendant); *see also Holmes v. City of Chicago*, No. 09-CV-2481, 2016 WL 6442117, at *9 (N.D. Ill. Nov. 1, 2016) (same). The Court similarly denies Duke's request to bar any argument or comment that the jury should "send a message" to Defendants given that such an argument is permitted where punitive damages are at issue, and an appropriate limiting instruction can minimize any prejudice to Defendants. *See Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 445 (7th Cir. 2010) (argument that jury should "send [a] message" to the defendant was not prejudicial where the district court instructed the jury that "statements made by attorneys are not evidence"); *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *5 (N.D. Ill. Jan. 31, 2017) (permitting such argument where punitive damages were at issue).

### T.    Reference to OSHA Regulations and Policies

Amazon contends that the Court should prohibit Woods from introducing evidence or references about safety policies based on regulations promulgated by the U.S. Occupational Safety and Health Administration ("OSHA"). ('4339, R. 189, Mot. at 2-6.) The Court cannot conclude at this time that such evidence is inadmissible for all purposes. *See, e.g., Aguirre v. Turner Constr. Co.*, 582 F.3d 808, 815 (7th Cir. 2009) ("Illinois courts sometimes do look to such regulations for evidence of what due care should require."); *Mcfarland v. Tricom Indus., Inc.*, No. 13 C 4576, 2015 WL 671802, at *2 (N.D. Ill. Feb. 17, 2015) ("[I]t seems common sense that a jury, when determining whether or not a ladder was unreasonably dangerous, would wish to know recognized safety standards and typical human reactions to them."); *Heck v. Simplexgrinnell LP*, No. 14 C 5491, 2016 WL 704811, at *10 (N.D. Ill. Feb. 23, 2016) ("The factfinder may properly consider such regulations when determining what the duty of care entailed and whether it was breached."); *Neuhengen v. Glob. Experience Specialists, Inc.*, 109 N.E.3d 832, 870 (Ill. App. Ct. 2018) ("We see no reason why this evidence regarding OSHA violations was not relevant to the determination of GES's willful and wanton misconduct and was properly admitted at trial."). Accordingly, the Court denies Amazon's MIL.

### U.    Testimony Regarding Amazon's Responsibility to Oversee Rack Installation

Amazon moves to bar Woods from presenting evidence or commentary by Woods' expert witness, Stephen Fournier ("Fournier"), about Amazon's alleged duty to "oversee" the construction of warehouse racks. ('4339, R. 190, Mot. at 1-3.) Amazon argues that such testimony is inadmissible under Rules 402 and 403 because it is confusing and prejudicial, and it argues that the testimony would not help the jury understand the evidence or determine a fact in issue. (*Id.* at 2-3.) In response, Woods argues that Fournier's testimony would not be prejudicial

17

or confusing, and that the testimony is helpful to the jury because it is relevant to whether Amazon controlled Woods' work. (*Id.*, R. 253, Resp. at 2-3.)

The Court does not find any basis to exclude Fournier's testimony under Rule 402 or 403, as evidence about Amazon's control over the construction project is highly relevant and not substantially outweighed by any danger of prejudice or confusion. (*See* '4339, R. 152, Order at 3 (concluding that issues of material fact remain as to whether Amazon retained control over Woods' work).) The Court, therefore, turns to Amazon's challenge under Rule 702, in which Amazon contends that Fournier's testimony about control will not help the jury understand the evidence or determine a fact in issue. (*Id.*, R. 190, Mot. at 3.) According to Amazon, Fournier's testimony is an inadmissible opinion on the ultimate legal issue of whether Amazon owed a duty to Woods because it controlled or supervised his work. (*Id.*)

"An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). As a result, "[e]xpert opinions on ultimate issues are not categorically impermissible." *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017); *see also United States v. Pansier*, 576 F.3d 726, 738 (7th Cir. 2009) (no error where an expert witness testified about an ultimate issue in the case). In addition, "[a]n expert's testimony frequently gives rise to 'inferences' that bear on the ultimate issue." *United States v. Diekhoff*, 535 F.3d 611, 620 (7th Cir. 2008). "Otherwise, it is doubtful that the expert's testimony would be helpful to the jury." *Id.* Whether Amazon was required to "oversee" Woods' work is not testimony on the ultimate legal issue of whether Amazon owed a duty to Woods and instead merely gives rise to inferences that bear on this ultimate issue, which is permitted under the Federal Rules of Evidence. *See id.* Even if Fournier's testimony opined on an ultimate issue in this case, the Court finds that such an opinion is admissible under the Federal Rules of Evidence. *See United States v. Kohli*, 847 F.3d

483, 491 (7th Cir. 2017) (concluding that expert testimony tracking "the elements necessary to sustain a conviction[,] . . . embodies an opinion about ultimate dispositive issues," and that "[s]uch opinions are expressly allowed"). Accordingly, Amazon's MIL is denied.

### V.     Evidence that Woods Was a "Good Worker"

The next contested MILs ask the Court to exclude evidence that Woods was a "good worker" because such evidence is irrelevant. ('4339, R. 173, Mot. at 1-2; R. 199, Mot. at 1-2.) These MILs are denied as premature because whether such evidence is relevant depends on the purpose it is offered for and the context in which it is offered. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

### W.     MILs Precluding Ashley Woods, Woods' Wife, From Testifying at Trial

Amazon and Duke request that the Court preclude Woods' wife, Ashley Woods, from testifying a trial because she was not listed in the discovery disclosures required by Federal Rule of Civil Procedure 26(a). ('4339, R. 180, Mot. at 2-3; *id.*, R. 206, Mot. at 2-3.) Woods maintains that he timely disclosed his wife as a trial witness and, alternatively, that his failure to list his wife in Rule 26(a) disclosures is harmless. (*Id.*, R. 255, Resp. at 2-4.) Woods notes that his wife was referenced in interrogatory responses, was discussed at a deposition, and that on April 15, 2019, after the close of discovery, the parties submitted an "Agreed Joint Witness List" that listed Ashley Woods as a trial witness. (*Id.*, R. 219, Agreed Joint Witness List at 20; *id.*, R. 255, Resp. at 2-4; *id.*, R. 255-2, Woods Dep. Tr. at 8.) None of these references to Woods' wife, however, referenced her as a person with discoverable information or as a potential trial witness before the close of discovery. (*See id.*, R. 219, Agreed Joint Witness List at 20; *id.*, R. 255, Resp. at 2-4; *id.*, R. 255-2, Woods Dep. Tr. at 8.)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or

(e), the party is not allowed to use that information or witness to supply evidence . . . at a trial,

unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Rule 26(a)

requires parties to list each individual likely to have discoverable information before the close of

discovery. FED. R. CIV. P. 26(a)(1)(A)(i). Whether Woods' failure to timely disclose his wife as

someone with discoverable information is substantially justified or harmless, "is entrusted to the

broad discretion of the district court," with the following factors guiding the Court's analysis:

"(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of

the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or

willfulness involved in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857.

Weighing these factors, the impending trial date, and the fact that the years-long

discovery phase of this case closed almost two months ago on March 29, 2019, ('4339, R. 27,

Min. Entry; *id.*, R. 124, Min. Entry), the Court orders Woods to make his wife available for a

deposition before trial and Defendants to work in good faith with Woods to schedule and

conduct the deposition. If the parties cannot, in good faith, conduct the deposition, Woods' wife

will be excluded due to the prejudice and surprise caused by Woods' failure to timely identify

her as an individual with discoverable information. *See Sanchez v. Garcia*, No. 12 C 06347, 2015

WL 2097606, at *3 n.5 (N.D. Ill. May 4, 2015) (declining to consider affidavit from a person

that was not listed in Rule 26(a) disclosures as someone with discoverable information); *U.S. ex

rel. Hudalla v. Walsh Constr. Co.*, No. 05 C 5930, 2012 WL 182206, at *2 (N.D. Ill. Jan. 21,

2012) (excluding witness over argument that the witnesses were disclosed "via the discovery

process" because the witnesses were disclosed "late in the litigation"); *Nutall v. Reserve Marine

Terminals*, No. 1:14 CV 4738, 2016 WL 3520151, at *4 (N.D. Ill. June 28, 2016) ("[W]e find

that to the extent Dr. Singh testifies only to content addressed in his deposition, non-disclosure was harmless and will not prejudice Defendant. If Dr. Singh's testimony exceeds the scope of his deposition testimony, however, this testimony will be excluded[.]" (citation omitted)).

The Court rejects Woods' argument that Defendants will not be prejudiced—although his wife was referenced in interrogatory responses and deposition testimony, she was not referenced as a person with discoverable information or as a potential trial witness. ('4339, R. 206 at 16, Woods Interrog. Resps.; R. 255-2, Woods Dep. Tr. at 8.) Notably, the joint witness list filed on April 15, 2019, was filed after discovery and "subject to the Court's ruling on pending . . . Motions *in Limine*[.]" (*Id.*, R. 219, Agreed Joint Witness List at 18.) At bottom, the testimony of Woods' wife would significantly prejudice Defendants because she was never disclosed as having discoverable information or as a potential witness until after discovery closed, foreclosing any opportunity to depose her. *See Sanchez*, 2015 WL 2097606, at *3 n.5; *Walsh Constr. Co.*, 2012 WL 182206, at *2; *Nutall*, 2016 WL 3520151, at *4. The Court, therefore, will not allow Woods' wife to testify unless she is deposed before trial.

## X. Steven Chudik's Rebuttal Opinions

Amazon moves to exclude the supplemental report of Woods' expert, Steven Chudik ("Chudik"). ('4339, R. 188, Mot. at 2-3.) Amazon contends that the supplemental report improperly disclosed, for the first time and after the expert disclosure deadline, Chudik's opinion that Woods will require a left knee arthroscopy, and that Woods is unlikely to respond to more conservative medical treatments that do not involve surgery. (*Id.*) Amazon also argues that Chudik's supplemental report cannot be characterized as a "rebuttal report," which would render the report's disclosure timely under the Federal Rules. (*Id.*)

In response, Woods maintains that Chudik's supplemental report is a rebuttal report responding to Amazon's expert, Mark Hutchinson ("Hutchinson"), that was not due until 30 days after March 12, 2019—the date that Amazon disclosed Hutchinson's report. (*Id.*, R. 256, Resp. at 2-3.) Hutchinson's report opines that: Woods was a "candidate for total knee arthroplasty regardless [of] the incident in question"; Woods should postpone any surgery "for as long as possible"; and the "accident in question[] more likely . . . than not contributed to the . . . ultimate need for surgical intervention." (*Id.*, R. 256-2, Hutchinson Report at 3.) The parties' dispute hinges on whether Chudik's supplemental report is properly characterized as a rebuttal to these opinions. If Chudik's supplemental report is a rebuttal report, it was disclosed in a timely manner because it was disclosed less than 30 days after Hutchinson's report, (*see id.*, R. 256-2, Hutchinson Report; *id.*, R. 256-3, Chudik Suppl. Report). *See* FED. R. CIV. P. 26(a)(2)(D)(ii).

"An expert rebuttal report is designed to 'contradict or rebut evidence' disclosed in the initial expert report." *Berkheimer v. Hewlett-Packard Co.*, No. 12 C 9023, 2016 WL 3030170, at *2 (N.D. Ill. May 25, 2016) (quoting Rule 26(a)(2)(D)(ii)). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Id.* (quotation omitted). "[T]he duty to supplement an expert opinion," however, "cannot be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(c)." *Vill. of Sauk Vill. v. Roadway Express, Inc.*, No. 15-CV-9183, 2017 WL 378424, at *2 (N.D. Ill. Jan. 25, 2017) (quotation omitted).

Chudik's initial report opines that Woods "will require future medical treatment for his left knee including conservative treatment (physical therapy and injections); possible ACL revision, medical meniscal transplant, and osteotomy or combination thereof; and total knee arthroplasty." ('4339, R. 256-1, Chudik Report at 9.) Hutchinson's report addresses whether total

knee arthroscopy is appropriate and whether Woods should undergo more conservative treatments that do not involve surgery. (*Id.*, R. 256-2, Hutchinson Report at 3.) In light of Hutchinson's report and Chudik's opening report, the Court concludes that Chudik's supplemental report is a timely and admissible rebuttal report because it does not advance new theories and is fairly designed to address or contradict Hutchinson's opinions. (*See id.*, R. 256-1, Chudik Report at 9; *id.*, R. 256-2, Hutchinson Report at 3; *id.*, R. 256-3, Chudik Suppl. Report at 1-2, 8-9.) Accordingly, the Court denies Amazon's request to exclude Chudik's supplemental report. *See Vill. of Sauk Vill.*, 2017 WL 378424, at *2 (declining to strike supplemental expert report because it did not advance a "new theory" but merely stated "the same opinion . . . at slightly more length"); *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, No. 08-CV-1083, 2010 WL 3894444, at *16 (N.D. Ill. Sept. 30, 2010) (denying MIL to exclude opinions in a rebuttal report because the rebuttal report's "new assertions [did] not appear to be so substantially different from the arguments and reference included in the opening reports that they set the case on an entirely new tack").

**Y.    Bifurcation**

Amazon and Duke ask the Court to bifurcate the trial so that all evidence and argument related to punitive damages are heard by the same jury, but only after the jury returns a verdict in Woods' favor and finds that punitive damages are appropriate. ('4339, R. 178, Mot. at 2; *id.*, R. 207, Mot. at 2.) In the alternative, Amazon and Duke request that the Court use a practice employed by another court in this district in which the jury is provided "with (1) an instruction that speaks to the subject of punitive damages and identifies what a plaintiff must prove to become potentially entitled to recover them and (2) a special verdict form that reports the jury's determination as to whether plaintiff has or has not done so." (*Id.*, R. 178, Mot. at 7; *id.*, R. 207,

Mot. at 6-7.) If the jury does not determine that the defendant is liable or that punitive damages are appropriate, the case ends, but if the jury finds that the defendant is liable and answers the special interrogatory in a way that creates a potential for punitive damages, the case continues with evidence relevant to punitive damages, closing arguments, and further jury instructions on punitive damages. *Dewick v. Maytag Corp.*, 324 F. Supp. 2d 889, 891 (N.D. Ill. 2004).

Federal Rule of Civil Procedure 42 addresses bifurcation and provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). "The burden is on the moving party to show that bifurcation is proper." *Fetzer v. Wal-Mart Stores, Inc.*, No. 13-CV-9312, 2016 WL 6833912, at *3 (N.D. Ill. Nov. 21, 2016) (quotation omitted). Considerable discretion is afforded to the district court in deciding whether bifurcation is appropriate. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). "[T]he normal procedure is to try compensatory and punitive damage claims together with appropriate instructions[.]" *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 871 (7th Cir. 1994); *see also* 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2388 (3d ed. 2008) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course."). Bifurcation is "the exception, not the rule[.]" *Fetzer*, 2016 WL 6833912, at *3 (quotation omitted).

In deciding whether to bifurcate a trial, "[t]he court must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). "First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir.

1999). "Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation." *Id.* "Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Id.* "Finally, separate trials must not be granted if doing so would violate the Seventh Amendment." *Id.*

The evidence and witnesses will overlap on the issue of whether Defendants acted negligently or whether they acted with "such gross negligence as to indicate a wanton disregard of the rights of others" such that punitive damages are appropriate. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017) (quotation omitted) (applying Illinois law). Evidence of Defendants' wealth and other evidence particular to the issue of punitive damages is minimal and does not justify the exception and burden of conducting separate trials. *See McLaughlin*, 30 F.3d 861; *Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *2 (N.D. Ill. Nov. 9, 2001) (denying bifurcation where "[t]he only evidence relevant to punitive damages that likely would be entirely separate from liability issues is evidence concerning net worth; but that evidence likely would not be extensive, and thus little in the way of economy would be achieved by severing punitive damages issues"); *cf. Vandersteen v. Kelly*, No. 07 C 5632, 2010 WL 659327, at *3 (N.D. Ill. Feb. 23, 2010) (bifurcating case where there was no likely overlap between the evidence that would be presented during the first phase of trial and in the punitive damages phase and where risk of prejudice to one defendant was more than speculative).

Defendants argue that bifurcation would save time and resources if the jury finds in their favor on liability, which would obviate the need for evidence on punitive damages. (*E.g.*, '4339, R. 178, Mot. at 4-5.) Defendants, however, fail to present a persuasive argument or evidence showing that they are likely to prevail on the issue of liability. *Cf. Fetzer*, 2016 WL 6833912, at

*4 (concluding that considerations of judicial economy did not weigh in favor of or against bifurcation where there was "strongly conflicting evidence" related to the defendant's liability). Defendants also fail to establish that bifurcation would more effectively reduce the risk of prejudice caused by evidence of Defendants' net worth than other means short of bifurcation, such as jury instructions or timing the presentation of net worth evidence until later in the trial. *See Challenge Aspen*, 2001 WL 1403001, at *3 (denying bifurcation because the defendants failed to show that potential prejudice could not be alleviated by means other than bifurcation); *see also Case*, 2013 WL 5645780, at *4.

The Court rejects Woods' alternative request for the Court to use special interrogatories or a special verdict form for punitive damages, which is similar to bifurcation. *See Dewick*, 324 F. Supp. 2d at 891. The Court, however, will delay the presentation of net worth evidence until there is a possibility of a punitive damages award. *See Challenge Aspen*, 2001 WL 1403001, at *3. Before Woods presents evidence of Defendants' net worth, Woods must move for permission to do so, at which point the Court will determine whether Woods has presented enough evidence to create a possibility of punitive damages such that Woods may proceed with evidence of Defendants' net worth. *See id.* Except for this caveat, the MILs related to bifurcation are denied.

### Z. Argument that Responsibility for Safety Cannot be Delegated to Other Parties

Duke and Steel King move to exclude any reference to OSHA regulations, specifically 29 C.F.R. §§ 1926.1 and 1926.10, and any evidence or argument that they cannot delegate safety responsibilities on a construction project. ('4339, R. 192-8, Mot. at 1-2; *id.*, R. 202, Mot. at 1-3.) The Court cannot conclude at this juncture that references to OSHA regulations or arguments or evidence about delegating responsibility for safety are inadmissible for all purposes. The Court defers ruling on these MILs until trial, where the Court will have a fuller context to rule on issues

related to Defendants' delegation of responsibility for safety. *See Gomez*, 2016 WL 212800, at

*1; *Lillie*, 669 F. Supp. 2d at 905.

### AA.  Testimony About Whether Amazon Supervised the Work or Pushed to Expedite the Construction Schedule

Amazon moves to exclude any testimony or commentary that Amazon supervised

Woods' work or that Amazon pushed the work to be completed at a faster pace. ('4339, R. 179,

Mot. at 1-2.) Amazon argues that any such evidence would be hearsay or speculation. (*Id.* at

2-5.) The Court, however, denies this MIL as premature and will give Woods the opportunity to

lay a foundation at trial to show that such testimony is not speculative. *See Gomez*, 2016 WL

212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

### BB.  Post-Accident Remedial Measures

Defendants and Lakeside argue that Federal Rules of Evidence 402, 403, and 407

prohibit Woods from presenting any evidence or comment about remedial measures taken by

Defendants after the accident in question occurred. ('4339, R. 170, Mot. at 2; *id.*, R. 192-3, Mot.

at 2-4; *id.*, R. 194, Mot. at 1, 3-5; *id.*, R. 198, Mot. at 2-3.) Woods objects, arguing that he is

entitled to introduce evidence of subsequent remedial measures to show that Defendants were

responsible for safety on the project, and that they had control over his work. (*Id.*, R. 271, Resp.

at 2-4.)

Rule 407 provides that "[w]hen measures are taken that would have made an earlier

injury or harm less likely to occur, evidence of the subsequent measures is not admissible to

prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning

or instruction." FED. R. EVID. 407. "But the court may admit this evidence for another purpose,

such as impeachment or—if disputed—proving ownership, control, or the feasibility of

precautionary measures." *Id.*

These MILs are denied as premature because there are a number of purposes for which evidence of subsequent remedial measures could be offered without running afoul of Rule 407. For example, Woods might offer such evidence to impeach testimony that Defendants had no authority to change unsafe practices at the construction site. *Cf. Passarella v. NFI Interactive Logistics, LLC*, No. 12 C 4147, 2016 WL 6134541, at *7 (N.D. Ill. Oct. 20, 2016) (noting that the plaintiff may be able to offer post-accident remedial measures if defendant opens the door to such measures). Woods might offer the evidence against a party who did not make the subsequent remedial changes. *E.g.*, *Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974) (concluding that Rule 407 "has no applicability when the evidence is offered against a party . . . which did not make the changes."). Accordingly, the MILs brought pursuant to Rule 407 are denied and deferred until trial so that the Court can issue a ruling that takes into account the purpose for which Woods' evidence is offered. *See, e.g.*, *Tomao v. Abbott Labs., Inc.*, No. 04 C 3470, 2007 WL 141909, at *5 (N.D. Ill. Jan. 16, 2007) (denying MIL seeking to exclude evidence under Rule 407 but noting the court's reluctance to consider admitting evidence of subsequent remedial measures as support for the plaintiff's liability claim). The Court also denies Defendants' request to exclude such evidence under Rules 402 and 403 for the same reason—the Court needs more context to properly weigh the probative value of such evidence and any danger of unfair prejudice. *See* Fed. R. Evid. 401-03.

## CC. Evidence of Prior Incidents

According to Defendants, the Court should exclude testimony that forklift operators had crashed into columns on the construction site before the accident involving Woods had occurred. ('4339, R. 181, Mot. at 2; *id.*, R. 192-30, Mot. at 1-2; *id.*, R. 204, Mot. at 1-2.) Defendants argue that such evidence is irrelevant and also inadmissible under Rule 403 because the evidence

28

involves different structures and different forklift operators, which would confuse the issues and substantially prejudice Defendants. (*Id.*, R. 181, Mot. at 2-5; *id.*, R. 192-1, Mot. at 1-2; *id.*, R. 204, Mot. at 2-5.) Defendants also argue that the Court should exclude as irrelevant or unfairly prejudicial any evidence showing that it was an uncertified forklift operator who crashed into the racks, causing them to collapse on Woods. (*Id.*, R. 181, Mot. at 3-5; *id.*, R. 204, Mot. at 2-5.) In response, Woods argues that such evidence is relevant to his punitive damages claim and admissible to show that Defendants were aware of forklifts being operated carelessly on the construction site but nevertheless recklessly or wantonly disregarded that hazard. (*Id.*, R. 274, Resp. at 2-3.)

Defendants invoke evidentiary principles implicating Rules 401 and 403 in which "[e]vidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988). "However, before such evidence will be admitted, the proponent must show that the other accidents occurred under substantially similar circumstances." *Id.* (emphasis omitted). "As the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases." *Id.* This case is not a products liability case, and therefore these evidentiary principles have a limited effect on this case. The Court nonetheless concludes that even if these evidentiary principles applied, other incidents of forklift operators crashing into other structures on the same construction site and on the same construction project are substantially similar and probative to outweigh any danger of unfair prejudice. *See Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 3614642, at *7 (N.D. Ill. Aug. 21, 2012) ("As the Seventh Circuit has reiterated, substantial similarity in this context does not require an exact

replica of the circumstances[.]"). Additionally, "[w]hile the requirement of similarity is heightened when prior accidents are being offered to show the existence of a dangerous condition or causation, that similarity requirement is less strict when the evidence sought to be admitted is used to show notice." *Id.* (quotation omitted). Here, the requirement of substantial similarity is relaxed because Woods intends to offer evidence of prior incidents to show that Defendants had notice of an unsafe condition. ('4339, R. 274, Resp. at 2-3.) Given these considerations, the Court denies Defendants' MILs to exclude evidence of prior accidents.

Defendants' request to bar evidence showing that the forklift operator who caused the accident in question lacked certification is also denied because such evidence is relevant to explain whether a poorly-managed construction project employing uncertified forklift operators led to the accident in question. *See Liszkiewicz v. CRG Residential, LLC*, No. 15 C 4088, 2017 WL 4512836, at *5 (N.D. Ill. Oct. 10, 2017) (explaining that the defendant's on-site presence and ability to control safety practices on a construction project is relevant to whether the defendant was negligent).

## DD. Evidence of Non-Union Workers Performing Work on the Project

Finally, Defendants ask the Court to exclude any evidence of or reference to Defendants employing non-union workers on the project because there "is no evidence that in fact any non[-]union workers worked at this project," and because such evidence would "imply that there was something improper about the project." ('4339, R. 183, Mot. at 1-3; *id.*, R. 192-10, Mot. at 1-3; *id.*, R. 197, Mot. at 1-3.) The Court denies this motion and will give Woods the opportunity to lay a foundation at trial to show why such evidence is relevant. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

## II. Plaintiff's MILs in *Woods*

### A. Heather Thompson's "Functional Capacity" Evaluation

Woods asks the Court to exclude under Rules 402 and 403 evidence of and any reference to a "Functional Capacity" evaluation ("FCE") performed by Heather Thompson ("Thompson"), M.D., on July 24, 2018, which evaluated Woods' medical condition. ('4339, R. 214, Mot. at 2-5.) Woods argues that the FCE is more than a year old and does not accurately reflect Woods' current medical condition. (*Id.* at 2.) Thus, according to Woods, the jury would be confused because the FCA "contradicts the medical evidence and opinions in this case." (*Id.* at 2-3.)

Woods merely disagrees with the conclusions of the FCE, which he is free to challenge by way of cross-examination and presentation of other medical evidence. That other medical evidence contradicts the FCE is not a basis to exclude it under Rules 402 and 403. *See United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011) (observing that "all probative evidence is to some extent prejudicial" and that "we have consistently emphasized that Rule 403 balancing turns on whether the prejudice is 'unfair'"). Woods has placed his medical condition at issue in this case to prove his damages, and therefore other medical evaluations are highly probative to contradict Woods' evidence and cannot be excluded under Rules 402 or 403. *See United States v. Boswell*, 772 F.3d 469, 477 (7th Cir. 2014) (concluding it was not error to admit evidence of the defendant's firearm tattoo because such evidence contradicted the credibility of defendant's testimony and was not unfairly prejudicial); *Common v. City of Chicago*, 661 F.3d 940, 947 (7th Cir. 2011) (finding no error where the district court rejected the plaintiff's Rule 403 objection and admitted evidence that was relevant to contradicting the plaintiff's claim). Accordingly, Woods' fourth MIL is denied.

**B.       James Radke's and Robert Baade's Opinions**

Woods maintains that the expert opinions of James Radke ("Radke") and Robert Baade ("Baade") are inadmissible pursuant to Rule 702 and the U.S. Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). ('4339, R. 213, Mot. at 1-3, 4-7.) More specifically, Woods argues that the opinions are inadmissible because they rely on Thompson's FCE performed on July 24, 2018, which renders Radke's and Baade's opinions unreliable. (*Id.*)

"In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quotation omitted). "[T]he district court must evaluate: (1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Id.*

"A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). The Court is given "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Id.* (quotation omitted). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698,

705 (7th Cir. 2009). "[R]ejection of expert testimony is the exception rather than the rule." FED.

R. EVID. 702, advisory committee notes (2000 Amendments).

Woods does not develop an argument challenging Radke's or Baade's qualifications, (*see*

'4339, R. 213, Mot. at 6), which the Court in any event concludes are enough to satisfy Rule

702,[2] so the Court focuses on whether Radke and Baade applied reliable methodologies and

whether their opinions are relevant. *See Gopalratnam*, 877 F.3d at 779. An expert's opinion must

be "reasoned and founded on data," and must also "utilize the methods of the relevant

discipline." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011). An expert's

testimony, however, "is not unreliable simply because it is founded on his experience rather than

on data" because Rule 702 allows an expert witness to be qualified on the basis of his or her

experience. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Rule 702

"does require, however, that the expert explain the methodologies and principles that support his

opinion; he cannot simply assert a bottom line." *Id.* (quotation omitted). Some of the factors to

consider under *Daubert* are "(1) whether the proffered theory can be and has been tested; (2)

whether the theory has been subjected to peer review; (3) whether the theory has been evaluated

in light of potential rates of error; and (4) whether the theory has been accepted in the relevant

scientific community." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017). No single

factor is required in the Court's analysis or dispositive; rather the Court "may apply these factors

flexibly as the case requires." *Id.* "The goal of *Daubert* is to assure that experts employ the same

---

[2] An expert is qualified by "knowledge, skill, experience, training, or education" in the area they are opining on and both experts' experience and curriculum vitae in the fields of vocational rehabilitation and economics, respectively, establish that they satisfy this threshold, ('4339, R. 213-5, Radke Report at 5-11; *id.*, R. 260-4, Baade Curriculum Vitae at 1-12). FED. R. EVID. 702; *Trs. of Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (individual with significant experience in the relevant field was sufficiently qualified under Rule 702 to give expert testimony).

intellectual rigor in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quotation omitted).

With respect to the methodology prong of the *Daubert* analysis, Woods argues that Radke's and Baade's methodologies are flawed because they rely on erroneous data, namely, Thompson's FCE, and reach the wrong conclusion because of their reliance on the FCE. ('4339, R. 213, Mot. at 6-7.) That Defendants' experts might have reached the wrong conclusions is not an appropriate basis to exclude their opinions. *Daubert*, 509 U.S. at 595 ("The focus . . . must be solely on principles and methodology, not on the conclusions that they generate."). As for Woods' argument that Radke's and Baade's methodologies are unreliable because the FCE is outdated, the Court disagrees that an outdated FCE renders their opinions inadmissible. The fact that the FCE is outdated goes to the weight of the opinions, not their admissibility. *See In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *20 (N.D. Ill. Mar. 31, 2017) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." (quotation omitted)); *Ernst v. City of Chicago*, 39 F. Supp. 3d 1005, 1012-13 (N.D. Ill. 2014) (outdated observations went to the weight of the expert's testimony, not admissibility).

Radke's and Baade's opinions are work-rehabilitation and economic analyses, respectively, based on the type of compensation and employment Woods might expect in the future in light of his injuries and employment history. ('4339 R. 213-5, Radke Report at 3-4; *id.* R. 213-7, Baade Report at 4-30.) Woods does not advance any argument that either expert's *methodology*—as opposed to data considered by the experts—is unsound, has failed to be tested, or has been rejected in the scientific community, (*see id.*, R. 213, Mot. at 1-3, 4-7). *See Krik*, 870

F.3d at 674. Additionally, upon review of the opinions, which are supported by the experts' experience, industry research, and academic research, the Court concludes that Radke's and Baade's methodologies survive scrutiny under Rule 702 and *Daubert*, (*e.g.*, *id.*, 213-6 Baade Report at 4-30). *See Krik*, 870 F.3d at 674.

Next, Woods argues that Radke's and Baade's opinions are irrelevant, but the Court rejects that argument because their opinions directly relate to Woods' future earning capacity and will help the jury in resolving the extent of Woods' damages. *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2015 WL 5050214, at *13 (N.D. Ill. Aug. 25, 2015) ("[T]he underlying data [the defendant's expert] provides, and the debate about his conclusions that will inevitably occur at trial, will surely assist the jury in analyzing key issues in the case. [The defendant's expert's] testimony is therefore relevant under Rule 702 and *Daubert*."). Radke's and Baade's opinions are also offered to directly contradict Woods' case on damages and therefore will not be excluded on grounds of irrelevance or unfair prejudice. *See Boswell*, 772 F.3d at 477; *Common*, 661 F.3d at 947. This MIL, therefore, is denied.

### C. OSHA Findings

Woods moves to bar evidence or mention of OSHA's investigation or findings related to the accident at issue, ('4339, R. 210, Mot. at 1), but the Court denies this motion as premature without the fuller context of trial to weigh the relevance and admissibility of this evidence. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905. The Court also rejects Woods' contention that OSHA investigations and findings are privileged, as the legal authority Woods cites does not support his proposition that any party in a civil case can assert a claim of privilege over OSHA materials; instead, it observed that the federal government may invoke a claim of

privilege. (*See* '4339, R. 210, Mot. at 2 (citing *Marshall v. Elward*, 399 N.E.2d 1329, 1333 (Ill. 1980).).)

### D. Mitigation of Damages

Woods' next contested MIL asks the Court to preclude any "arguments, mention, or innuendo" that he failed to mitigate damages. ('4339, R. 211, Mot. at 1-3.) This motion relates to argument by counsel; therefore, it is denied as premature and cannot be resolved until the parties present their evidence at trial. *See United States v. Nunez*, 532 F.3d 645, 654 (7th Cir. 2008) (no error where "[n]othing in the prosecutor's closing argument was based on evidence outside of the trial record"); *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008) ("Attorneys have more leeway in closing arguments *to suggest inferences based on the evidence*[.]" (emphasis added)).

### E. Reference to Woods' Tobacco Use

Woods moves to bar any reference to smoking, tobacco, and "tobacco use disorder." ('4339, R. 215, Mot. at 1.) This motion is granted because the Court finds that, in a negligence case involving injuries caused by collapse of a structure, any relevance of such information or evidence is substantially outweighed by a danger of unfair prejudice, confusion, and wasting time. *See* FED. R. EVID. 403. Defendants argue that smoking "inhibits the healing process," (*e.g.*, '4339, R. 285, Resp. at 2-3), but until the parties place Woods' healing process at issue in a way that implicates his tobacco use or makes his tobacco use more relevant to decide an issue in this case, such evidence and information is excluded at trial.

### F. Reference to Defendants' Willful or Wanton State of Mind

Woods asks the Court, pursuant to Rules 402 and 403, to prohibit Defendants from introducing evidence showing that they lacked actual or deliberate intent to harm Woods. ('4339, R. 218, Mot. at 1-2.) The Court denies this motion because Defendants' state of mind is highly

probative of whether or not punitive damages should be awarded. *See Parker*, 845 F.3d at 812; *see also* FED. R. EVID. 401, 403. The Court also denies Woods' request in this MIL related to the jury instructions, ('4339, R. 218, Mot. at 2-3), because the Court has its own procedures for jury instructions, to be discussed at the pretrial conference, that will resolve any disputes related to jury instructions.

## III. Lakeside's MILs in *Woods*

The only remaining objection to an MIL filed by Lakeside is Steel King's objection to Lakeside's first MIL, (*see* '4339, R. 275, Resp. at 1), which asks the Court to exclude evidence of a purchase order allegedly entered into between Lakeside and Steel King. (*Id.*, R. 168, Mot. at 2.) Lakeside argues that such evidence lacks foundation, but the MIL is premature, and the Court will defer ruling on this MIL until a foundation for this evidence is presented at trial. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

## IV. Defendants' MILs in *Johnson*

### A. Liability Insurance

For the same reasons set forth above in Section I.A., Defendants' and Lakeside's MILs related to liability insurance, ('7335, R. 135, Mot. at 2; *id.*, R. 136, Mot. at 1-2; *id.*, R. 151, Mot. at 1-2; *id.*, R. 172, Mot. at 2), are granted with the caveat that parties may present such evidence if they lay an adequate foundation showing that the evidence is relevant to proving bias, agency, ownership, or control.

### B. Voir Dire

Defendants' MILs related to questions during jury selection, (*id.*, R. 136, Mot. at 3, 10; *id.*, R. 151, Mot. at 3, 11; *id.*, R. 172, Mot. at 3-4, 15-16), are denied for the same reasons set forth above in Section I.B.

### C. Witness Credibility

Defendants' MILs related to witness credibility, (*id.*, R. 136, Mot. at 12; *id.*, R. 151, Mot. at 13; *id.*, R. 172, Mot. at 14), are denied for the same reasons described above in Section I.F.

### D. Undisclosed Opinions and Testimony

Amazon's MIL related to undisclosed opinions or testimony, (*id.*, R. 136, Mot. at 7), is granted in part and denied in part in the same manner set forth above in Section I.H for the same reasons referenced in that section.

### E. References to a Failure to Agree or Stipulate to Matters in Controversy

Defendants' MILs related to a party's failure to stipulate to matters in controversy, (*id.*, R. 136, Mot. at 20; *id.*, R. 151, Mot. at 8; *id.*, R. 172, Mot. at 13), are denied for the reasons stated above in Section I.C.

### F. Lay Testimony Regarding Pain and Suffering

Defendants' MILs related to pain and suffering evidence, (*id.*, R. 136, Mot. at 8-9; *id.*, R. 151, Mot. at 9; *id.*, R. 172, Mot. at 11-12), are denied for the reasons set forth above in Section I.D.

### G. Non-Expert Medical Opinions

Defendants' MILs related to non-expert medical opinions, (*id.*, R. 136, Mot. at 9; *id.* R. 151, Mot. at 9; *id.*, R. 172-6, Mot. at 2), are denied for the reasons discussed above in Section I.O.

### H. Testimony of Johnson's Treating Physicians

These MILs, (*id.*, R. 136, Mot. at 24; *id.*, R. 151, Mot. at 10), are denied for the same reasons they are denied in Section I.E above.

### I. Lay Testimony on the Ultimate Issue of Whether Defendants Were "Negligent"

Amazon's and Duke's MILs related to lay testimony on the ultimate issue of whether Defendants were "negligent," (*id.*, R. 136, Mot. at 9; *id.*, R. 151, Mot. at 10), are granted for the reasons explained above in Section I.P.

### J. Commentary on Witnesses in Defendants' Control Not Called to Testify

Amazon's and Duke's MILs related to witnesses in Defendants' control not called to testify, (*id.*, R. 136, Mot. at 26; *id.*, R. 151, Mot. at 10), are granted in the same manner as the MILs referenced in section I.G above.

### K. Commentary on Defendants' Failure to Retain Medical Expert

These MILs, (*id.*, R. 136, Mot. at 11; *id.*, 151, Mot. at 11-12; *id.*, R. 172, Mot. at 15), are denied for the same reasons set forth above in Section I.I.

### L. Personal Beliefs on Credibility

These MILs, (*id.*, R. 136, Mot. at 12; *id.*, R. 151, Mot. at 13; *id.*, R. 172, Mot. at 14), are granted for the reasons outlined in section I.Q above.

### M. Commentary on the Burden of Proof

Defendants' MILs related to the burden of proof in criminal cases, (*id.*, R. 136, Mot. at 11-12; *id.* R. 151, Mot. at 12; *id.*, R. 172, Mot. at 13), are denied for the reasons set forth above in Section I.J.

### N. Evidence that Johnson Was a "Good Worker"

Amazon's and Duke's MILs related to evidence and commentary about Johnson being a "good worker," (*id.*, R. 137, Mot. at 1-2; *id.*, R. 160, Mot. at 1-2), are denied for the reasons described above in Section I.V.

**O.** **Reference to What a Reasonable Person Would Pay to Avoid the Accident**

These MILs, (*id.*, R. 138, Mot. at 1-2; *id.*, R. 141, Mot. at 1-2; *id.*, R. 172-9, Mot. at 1-2), are denied for the reasons explained above in Section I.R.

**P.** **Johnson's Mental and Emotional Condition**

Amazon's MIL related to Johnson's mental and emotional condition, (*id.*, R. 139, Mot. at 1-2), is denied for the same reasons outlined above in Section I.K.

**Q.** **Lost Wages**

Amazon moves to exclude any speculative testimony related to Johnson's lost earnings resulting from the accident in question. (*Id.*, R. 141, Mot. at 3-4.) Although the Court agrees that Johnson is not qualified to offer his opinions on economic matters generally, the Court denies this motion and defers ruling on it until trial where there will be more context to separate speculative testimony from testimony based on Johnson's personal knowledge. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

**R.** **Bifurcation**

The MILs related to bifurcation of the trial, ('7335, R. 143, Mot. at 7-8; *id.*, R. 170, Mot. at 7), are denied for the same reasons discussed above in Section I.Y.

**S.** **Testimony About Whether Amazon Supervised the Work or Pushed to Expedite the Construction Schedule**

This MIL, (*id.*, R. 144, Mot. at 4-5), is denied for the reasons set forth above in Section I.AA.

**T.** **Post-Accident Remedial Measures**

Defendants' and Lakeside's MILs related to post-accident remedial measures, (*id.*, R. 158, Mot. at 3; *id.*, R. 171, Mot. at 6; *id.*, R. 172-3, Mot. at 4), are denied for the reasons stated above in Section I.BB.

### U.  Prior Incidents

Amazon's MIL concerning prior incidents involving forklift operators, (*id.*, R. 145, Mot. at 5), is denied for the reasons set forth above in Section I.CC.

### V.  "Speculative Testimony"

These MILs, (*id.*, R. 146, Mot. at 3; *id.*, R. 154, Mot. at 2), are denied for the reasons explained in Section I.L. above.

### W.  Evidence of Non-Union Workers Performing Work on the Project

Defendants' MILs related to non-union workers, (*id.*, R. 147, Mot. at 4; *id.*, R. 155, Mot. at 3; *id.*, R. 172-10, Mot. at 3), are denied for the reasons set forth above in Section I.DD.

### Y.  Testimony about Contract Interpretation

These MILs, (*id.*, R. 148, Mot. at 3; *id.*, R. 162, Mot. at 3; *id.*, R. 172-11, Mot. at 2), are denied for the reasons stated above in Section I.M.

### Z.  Testimony of Jayne Braden

Amazon and Duke ask the Court to exclude Johnson's expert witness, Jayne Braden ("Braden"), from testifying at trial about Johnson's post-traumatic stress disorder ("PTSD") because she is not qualified and because her opinions are irrelevant. (*Id.*, R. 149, Mot. at 2-3; *id.*, R. 166, Mot. at 4-5.) They argue that although Braden is a psychologist, she has little experience related to PTSD and did not provide any treatment to Johnson for PTSD. (*Id.*, R. 149, Mot. at 2-3; *id.*, R. 166, Mot. at 4-5.) The Court addresses the admissibility of Braden's expert testimony pursuant to the legal standard set forth above in Section II.B. The Court, however, only addresses Braden's qualifications and the relevance of her testimony given that Defendants do not challenge her methodology and therefore waive such a challenge. *See Trs. of Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall*

& *Decorating, Inc.*, 493 F.3d 782, 789 (7th Cir. 2007) (noting that unsupported and undeveloped arguments are waived).

In her psychology practice, Braden uses her experience as a clinical psychologist to treat patients like Johnson and relies on her staff to advise her on matters related to PTSD. ('7335, R. 250-1, Braden Dep. Tr. at 23-24, 33-34.) She treated Johnson, but not for PTSD, and although PTSD is not her specialty, she has treated patients that suffered from PTSD and incorporates her team's input into her treatment and opinions on PTSD cases. (*Id.* at 21-22, 33-34.) This is enough for her to be qualified as an expert under Rule 702 and *Daubert*. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000) ("[The plaintiff's expert] is not a psychiatrist and well might not be able to render an opinion about diagnosing post-traumatic stress disorder on the basis of something other than electrical trauma. However, as the leader of a clinical team specializing in electrical injury, who reasonably relied on the expert opinions of specialists who also examined [the plaintiff], her conclusion that [the plaintiff] suffered from post-traumatic stress disorder was a professional opinion that the jury had the right to consider."). That she does not regularly treat patients with PTSD and reviewed the work of her staff in rendering her opinions goes to the weight of Braden's opinions, not their admissibility. *See Burbach Aquatics, Inc. v. City of Elgin*, No. 08 CV 4061, 2011 WL 204800, at *4 (N.D. Ill. Jan. 18, 2011) ("Any limitations in [the expert's] background relating to his work [in a different sub-specialty within the relevant field] go to the weight that should be given to his testimony, not its admissibility, and thus are properly the subject of cross-examination."); *see also Chaudhry v. Provident Life & Accident Ins. Co.*, No. 12 C 5838, 2015 WL 1980253, at *7 (N.D. Ill. May 1, 2015) (fact that expert did not conduct an independent assessment went to weight, not admissibility). The Court, therefore, rejects Defendants' challenge to Braden's qualifications.

The Court also rejects Defendants' argument that Braden's testimony is not relevant, as her opinions on Johnson's psychological condition following the accident are relevant to his damages. *See Babikian v. Mruz*, 956 N.E.2d 959, 964 (Ill. App. Ct. 2011) (noting that damages for emotional distress are available to prevailing plaintiffs in cases involving personal torts). Accordingly, the MILs to exclude Braden's testimony are denied.

### AA.   Punitive Damages and References to Defendants' Wealth

Defendants' MILs related to punitive damages and their wealth, ('7335, R. 150, Mot. at 1-2; *id.*, R. 152, Mot. at 1-2; *id.*, R. 151, Mot. 13; *id.*, R. 164, Mot. at 1-2; *id.*, R. 172-7, Mot. at 2-3), are denied for the reasons discussed above in Section I.S.

### BB.   Reference to OSHA Regulations and Policies

This MIL, (*id.*, R. 156, Mot. at 6), is denied for the reasons set forth above in Section I.T.

### CC.   Testimony Regarding Amazon's Responsibility to Oversee Rack Installation

Amazon's MIL related to Fournier's opinions about Amazon's responsibility to oversee Johnson's work, (*id.*, R. 157, Mot. at 3), is denied for the reasons explained in Section I.U above.

### DD.   "Gruesome" Photographs

Pursuant to Rule 403, Duke moves to exclude photographs of Johnson's injuries at the scene of the accident and during his surgery because they are "gruesome" and overly prejudicial. (*Id.*, R. 168, Mot. at 3.) Though Duke describes what the photographs depict—a deformed nose, broken bones, and blood—Duke does not include the photographs at issue with his motion. (*Id.* at 2.) The Court notes that, because this lawsuit places Johnson's injuries directly at issue, photographs of his injuries are highly probative. *See Haley v. Gross*, 86 F.3d 630, 646 (7th Cir. 1996) (no error in admitting photograph of charred body because "[w]hile the photograph [was] certainly disturbing, its contents were highly relevant"). The Court, however, will defer ruling on

this MIL until trial where the Court can review the photographs and the purpose for which admission is sought before deciding whether those photographs are admissible. As such, Duke's MIL is denied.

## V. Plaintiff's MILs in *Johnson*

### A. Johnson's Comparative Fault

Johnson asks the Court to bar any evidence of or reference about Johnson's own negligence contributing to his injuries. ('7335, R. 174, Mot. at 1-2.) Johnson argues that such evidence and references should be barred because there is no evidence that Johnson contributed to his own injuries, and because Defendants cannot meet their burden to allow for a defense of contributory negligence. (*Id.*) This MIL is denied because it is simply an argument that a defense fails on the merits and is outside the province of an MIL, which is directed toward the admissibility of evidence. *See Sys. Dev. Integration, LLC v. Comput. Scis. Corp.*, No. 09-CV-4008, 2012 WL 2953063, at *6 (N.D. Ill. July 19, 2012) ("If, as SDI asserts, those facts are undisputed, SDI would have had a strong basis to move for summary judgment on CSC's affirmative defenses. Notably, SDI did not do so, and it cannot bootstrap such a motion to its motions in limine."); *Huff v. State of Illinois*, No. 97 C 4568, 2003 WL 168630, at *2 (N.D. Ill. Jan. 23, 2003) ("Deciding claims on the merits is not a proper office of a motion in limine.").

### B. Prior Convictions for Possession of Controlled Substances

Pursuant to Rules 403 and 609, Johnson moves to exclude any evidence of his prior convictions for possession of controlled substances. ('7335, R. 176, Mot. at 2-3.) These convictions include a felony conviction in 2002 for possession of marijuana and a felony conviction in 2008 for possession of cocaine. (*Id.*, R. 198-1, Johnson Dep. Tr. at 115-18.)

Plaintiff was incarcerated after his conviction for possession of cocaine, and he was released on July 16, 2012. (*Id.* at 118.)

Rule 609 sets forth the circumstances in which a party can introduce evidence of a criminal conviction to attack a witness' character for truthfulness. FED. R. EVID. 609(a). It provides that a conviction punishable by death or imprisonment of more than one year "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant[.]" FED. R. EVID. 609(a)(1)(A). If, however, more than ten years have passed since the conviction or release from confinement for it, whichever is later, the conviction is admissible only if "its probative value . . . substantially outweighs its prejudicial effect; and . . . the proponent gives an adverse party reasonable written notice of the intent to use [the conviction]." FED. R. EVID. 609(b)(1)-(2).

This case involves an accident on a construction project causing injuries to Johnson. ('7355, R. 116, Order at 3-5; *id.*, R. 126, Order at 3-8.) The Court finds that both drug convictions have only the baseline probative value "built into Rule 609," and the risk of unfair prejudice is substantial. *See Jones v. Walters*, No. 12-CV-5283, 2016 WL 1756908, at *4 (N.D. Ill. Apr. 29, 2016). With this in mind, the Court first turns to the admissibility of Johnson's conviction for possession of marijuana, which occurred more than ten years ago. Convictions older than ten years are "presumptively inadmissible" pursuant to Rule 609(b). *United States v. Jackson*, 546 F.3d 801, 819 (7th Cir. 2008). Because the marijuana conviction has little probative value and creates a substantial risk of unfair prejudice, this evidence is inadmissible and cannot clear the high bar under Rule 609(b), which requires Defendants to establish that the conviction's probative value substantially outweighs its prejudicial effect. *See* FED. R. EVID. 609(b)(1)-(2).

Johnson's conviction for possession of cocaine presents a closer call on admissibility, because he was released from confinement after that conviction less than ten years ago. ('7335, R. 198-1, Johnson Dep. Tr. at 118.) Therefore, admission of that felony conviction is not subject to the more rigorous requirements imposed by Rule 609(b). *See* FED. R. EVID. 609(a)-(b). The Court, however, concludes that Johnson's conviction for possession of cocaine in 2008 is far removed from the facts of this personal injury case and has so little probative value as to Johnson's credibility that it must be excluded under Rules 609(a)(1) and 403 given the conviction's substantial prejudicial effect. *See Fermazin v. Menard, Inc.*, No. 15 C 7272, 2017 WL 1227937, at *5 (N.D. Ill. Mar. 31, 2017) (excluding felony conviction where the probative value of that conviction was "limited to the minimal presumption built into Rule 609," the conviction had "just about nothing to do with [the] case," and "admitting the conviction clearly would be prejudicial to [the plaintiff"); *Brinkley v. Santiago*, No. 11 C 6282, 2013 WL 12309671, at *2 (N.D. Ill. July 11, 2013) ("In light of the small probative value of the [driving while intoxicated and marijuana] convictions and the danger of unfair prejudice, the court excludes these convictions from evidence."); *Blackwell v. Kalinowski*, No. 08 C 7257, 2011 WL 1557542, at *2 (N.D. Ill. Apr. 25, 2011) (barring evidence of prior felony conviction under Rules 609(a)(1) and 403 where the conviction had minimal probative value and the defendants failed to demonstrate any significant probative value the conviction had to the witness' credibility). This is simply not the type of "he-said, he-said" dispute that makes Johnson's credibility crucial and would justify admission of his conviction for possession of cocaine. *See e.g., Gomez v. City of Chicago*, No. 13 C 05303, 2015 WL 13651138, at *4 (N.D. Ill. June 29, 2015). Accordingly, the Court grants Johnson's MILs to exclude his prior convictions for possession of marijuana and cocaine. If Defendants wish to use evidence of Johnson's convictions for another purpose, for

example, to show how Johnson's convictions impact his earning capacity, they must lay a foundation before doing so, ask for the Court's permission, and only reference the fact that Plaintiff is a convicted felon without any further detail about Johnson's prior conviction for possession of cocaine.

### C.    Radke's and Baade's Opinions

Johnson moves to exclude Radke's and Baade's expert testimony. ('7335, R. 182, Mot. at 6-8.) Turning first to Radke, Johnson's objections to Radke's opinions largely go to Radke's conclusions and not his qualifications, methodology, or relevance of his testimony.[3] An expert's opinion is not excluded simply because a party opposing it disagrees with the expert's conclusions. *See Daubert*, 509 U.S. at 595. Additionally, Radke employed the same methodology in Johnson's case as he did in Woods' case, ('7335, R. 182-1, Radke Report at 2-4), and the Court concludes that Radke is qualified, his methodology is sufficiently reliable, and his testimony is relevant for the same reasons described above in Section II.B. As a result, Radke's opinions are admissible, and the Court rejects Johnson's argument that Baade's report should be excluded because it relies "on the opinions of Radke, [which] should be barred." (*Id.*, R. 182, Mot. at 7.) The Court, therefore, denies Johnson's MIL to exclude the opinions of Radke and Baade.

### D.    OSHA Findings

Johnson's MIL related to OSHA findings and investigations, (*id.*, R. 180, Mot. at 2-4), is denied for the reasons discussed above in Section II.C.

---

[3] Johnson only offers a conclusory argument without record cites or citation to legal authority that Radke's opinions are "not based on sufficient facts or data;" "not the product of reliable principles and methods;" and "unreliable." This is insufficient to meaningfully raise the issue. *See Trs. of Chi. Painters*, 493 F.3d at 789 (7th Cir. 2007) (noting that unsupported and undeveloped arguments are waived).

### E.    Cause of Johnson's Injuries and Johnson's Prior Injuries

Defendants object to Johnson's MIL that seeks to bar any and all "testimony, evidence, argument[,] or inference that [his] injuries were a result of an incident or condition other than the accident in question." (*Id.*, R. 173, Mot. at 2.) Johnson's MIL is denied because the cause of his injuries and damages, whether they occurred from the accident in question or were in part caused by prior injuries, is directly at issue in this case. *See Jones v. Chi. HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1129 (Ill. 2000) ("The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and *an injury proximately caused by the breach.*" (emphasis added)).

### F.    Prior Injuries

Johnson asks the Court to exclude all testimony, evidence, and inferences relating to any "prior and subsequent injuries or conditions to the areas of the body not affected as a result of this accident." ('7335, R. 173, Mot. at 3.) The Court denies this MIL as premature because the Court cannot say at this time and without further context that Johnson's injuries to other parts of his body that are unrelated to the accident in question lack any relevance or are otherwise inadmissible. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

### G.    Mitigation of Damages

Johnson's MIL related to mitigation of damages, ('7335, R. 173, Mot. at 4), is denied for the reasons set forth above in Section II.D.

### H.    Failure to Call Witnesses or Present Evidence

Johnson asks the Court to bar any mention of Johnson's failure to call witnesses or present evidence. (*Id.*, R. 173, Mot. at 4.) This MIL is denied because the Court will not preclude Defendants from arguing that there are deficiencies in Johnson's case due to the absence of

certain evidence. *See Cooper*, 2012 WL 1748150, at *4; *Sommerfield*, 2014 WL 12802632, at *1.

**I.      Argument that a Non-party to this Litigation Caused the Accident at Issue**

Johnson argues that the Court should bar any reference, innuendo, or argument that a non-party to this litigation caused the accident in question. (*Id.*, R. 173, Mot. at 5.) This motion relates to argument by counsel; therefore, it is denied as premature and better addressed in the more fulsome context of trial. *See Nunez*, 532 F.3d at 654; *Soltys*, 520 F.3d at 745.

**J.      Argument that Lakeside Caused the Accident at Issue and Listing Lakeside on Verdict Form**

Johnson asks the Court to bar Lakeside from being "apportioned any fault" for his injuries and from appearing on the verdict form in this case. ('7335, R. 175, Mot. at 3.) This MIL is denied because it goes to the merits of the case, namely whether Lakeside was responsible instead of Defendants, and is not properly addressed by way of an MIL. *See Huff*, 2003 WL 168630, at *2. The Court will address issues related to the verdict form after the close of testimony and after the parties have presented their proposed verdict forms to the Court.

**K.      Johnson's Medical Bills**

Johnson argues that, "[i]n the event that [he] chooses not to claim the medical bills he has incurred in this case as damages . . . , the existence of the medical bills becomes irrelevant[.]" ('7335, R. 179, Mot. at 1.) This motion is premature on its face; therefore, this MIL is denied and will be decided at trial where the Court can ascertain whether Johnson is placing his medical bills at issue. *See Gomez*, 2016 WL 212800, at *1; *Lillie*, 669 F. Supp. 2d at 905.

**L.      Joint Motions and Objections**

Johnson asks that the Court allow him to adopt the same witnesses, evidentiary objections, and exhibits from Woods' case. ('7335, R. 177, Mot. at 1-2.) This motion is denied

without prejudice, and the Court will reserve its rulings on these issues until trial because the cases are slightly different from each other, which is evident from the Court's rulings on the parties' MILs. The parties should be prepared to raise and discuss any issues related to consolidation of the trials, evidence, and objections at the pretrial conference.

## VI. Lakeside's MILs in *Johnson*

The only remaining objection to Lakeside's MILs is Steel King's objection to Lakeside MIL number 1. (*Id.*, R. 196, Resp.) The Court denies Lakeside's MIL for the reasons discussed above in Section III.

## CONCLUSION

For these reasons, the parties' MILs in both cases ('4339, R. 168-207, 210-18; '7335, R. 132-77, 179-80, 182) are GRANTED in part and DENIED in part as set forth herein. All unopposed MILs are granted.

The parties shall appear for a final pretrial conference on June 6, 2019, at 11:30 a.m. The parties are ORDERED to file a revised joint pretrial order on or before June 5, 2019, identifying the exhibits that are now admissible or inadmissible based on the Court's rulings, or whose admissibility is still in question. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to trial.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 30, 2019**