UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANDREW WOODS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 17 C 4339 |
| v. | ) |  |
|  | ) | Chief Judge Rubén Castillo |
| AMAZON.COM, LLC et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

Andrew Woods ("Woods") and Michael Johnson ("Johnson") (collectively, "Plaintiffs") bring separate but related personal injury actions against Amazon.com, LLC ("Amazon"), Duke Realty Limited Partnership ("Duke"), and Steel King Industries, Inc. ("Steel King") (collectively, the "Defendants"). (17-cv-4339 [hereinafter '4339], R. 141, Third Am. Compl.; 17-cv-7335 [hereinafter '7335], R. 106, Second Am. Compl.) Defendants bring third-party contribution claims against Lakeside Rack Installers, Inc. ("Lakeside"), all of which arise out of the events alleged in Plaintiffs' personal injury actions. ('4339, R. 45, Third-Party Compl.; *id.*, R. 46, Third-Party Compl.; *id.*, R. 138, Am. Third-Party Compl.; '7335, R. 33, Third-Party Compl.; *id.*, R. 57, Third-Party Compl.; *id.*, R. 103, Am. Third-Party Compl.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Lakeside moves in both cases to partially dismiss Steel King's amended third-party complaints. ('4339, R. 224, Mot. at 7; '7335. R. 188, Mot. at 7.[1]) For the reasons stated below, Lakeside's motions to dismiss are denied.

---

[1] The motions, response briefs, and reply briefs filed in both cases raise the same arguments, so the Court will cite only to the motion and briefs filed in the '4339 case. (*Compare* '4339, R. 224, Mot., *with* '7335, R. 188, Mot.; *compare* '4339, R. 369, Resp., *with* '7335, R. 326, Resp.; *compare* '4339, R. 380, Reply, *with* '7335, R. 338, Reply.)

## BACKGROUND

Plaintiffs allege that Duke's, Amazon's, and Steel King's negligence caused the injuries Plaintiffs sustained on a construction project when a forklift crashed into a structure, causing the structure to collapse on Plaintiffs. ('4339, R. 141, Third Am. Compl. ¶¶ 11-68; '7335, R. 106, Second Am. Compl. ¶¶ 11-68.) The structure at issue was a steel shelving rack Plaintiffs were building inside a newly-constructed warehouse that would serve as an Amazon distribution center. (*See* '4339, R. 150, Answer ¶¶ 12-13; *id.*, R. 303, Resp. to Def.'s Facts ¶¶ 8-10, 14; '7335, R. 114, Answer ¶¶ 12-13; *id.*, R. 265, Resp. to Def.'s Facts ¶¶ 8-10, 14.)

Plaintiffs claim that the structure collapsed because of unsafe construction practices and a rushed schedule on the construction project, which they allege was controlled by Amazon, Duke, and Steel King. ('4339, R. 141, Third Am. Compl. ¶¶ 8-68; '7335, R. 106, Second Am. Compl. ¶¶ 8-68.) Steel King, Duke, and Amazon have all filed third-party complaints for contribution against Lakeside, who was Plaintiffs' employer. ('4339, R. 45, Third-Party Compl. ¶¶ 5-12; *id.*, R. 46, Third-Party Compl. ¶¶ 5-12; *id.*, R. 138, Am. Third Party-Compl. ¶¶ 3-11; '7335, R. 103, Am. Third-Party Compl. ¶¶ 3-11; *id.*, R. 57, Third Party-Compl ¶¶ 4-12; *id.*, R. 33, Third Party Compl. ¶¶ 4-12.)

Steel King alleges in its amended third-party complaint that, pursuant to the terms of a purchase order entered into between Steel King and Lakeside, Lakeside waived "any protection or damages limitation it may have otherwise enjoyed or been entitled to under Illinois law." ('4339, R. 138, Am. Third-Party Compl. ¶ 11; '7335, R. 103, Am. Third-Party Compl. ¶ 11.) Steel King attaches to its complaint a "New Vendor Application Form" ("NVA Form") and an unsigned purchase order that contains an indemnity provision in which Lakeside agrees to "indemnify, defend, and hold harmless" Steel King "from and against any claim, liability, loss,

damage, lien, judgment . . . and cost, including attorneys' fees and litigation expenses, arising out of . . . [Lakeside's] failure to comply with any of its obligations under [the purchase order.]" ('4339, R. 138-1 at 11, NVA Form & Purchase Order; '7335, R. 103-1 at 11, NVA Form & Purchase Order.) The NVA Form, which is signed by a Lakeside representative, provides that Lakeside "agrees to all purchase order terms and conditions listed in the attached conditions sheet." ('4339, R. 138-1 at 6, NVA Form & Purchase Order; '7335, R. 103-1 at 6, NVA Form & Purchase Order.) The NVA Form also has a checklist for Steel King to "check off that . . . the following information has been received," which indicates that Steel King received a "Signed Copy" of the purchase order terms and conditions. ('4339, R. 138-1 at 6, NVA Form & Purchase Order; '7335, R. 103-1 at 6, NVA Form & Purchase Order.)

Lakeside moves to dismiss Steel King's claims that Lakeside waived damages limitations under Illinois law by agreeing to indemnify Steel King, first arguing that the indemnification provision is not binding because the purchase order containing the indemnification provision is unsigned. ('4339, R. 224, Mot. at 2.) Lakeside then argues that even if the purchase order was in effect, the purchase order does not explicitly waive Lakeside's rights under Illinois law to limit its contribution liability for workplace injuries to the amount Lakeside is liable for workers' compensation. (*Id.* at 2, 4-7.)

In response, Steel King maintains that the purchase order is effective without a signature because the parties assented to the terms of the purchase order even though they did not sign it. (*Id.*, R. 369, Resp. at 3-4.) More specifically, Steel King argues that the terms of the purchase order were incorporated by reference into the NVA Form, which was signed by a Lakeside representative. (*Id.*) Steel King then contends that, under Illinois law, the indemnity provision in the purchase order waives Lakeside's right to cap its liability for contribution to the amount

3

Lakeside is liable for workers' compensation. (*Id.* at 4-7.) Steel King asks the Court to find as a matter of law that Lakeside waived any such damages limitation. (*Id.* at 5-7.)

Lakeside filed a reply and argues—at odds with its motion to dismiss—that "it is premature" to decide the issue as a matter of law since there has "been no testimony or evidence as to whether the [purchase orders' terms] were a part of the agreement between Steel King and Lakeside." (*Id.*, R. 380, Reply at 6.) According to Lakeside, "it is unclear what agreement" with Steel King controls the parties' relationship. (*Id.* at 7.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). On a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all possible inferences in the pleader's favor. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the sufficiency of a complaint, courts must accept the well-pleaded facts in the complaint as true but need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018).

Courts "may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c); *Tobey*, 890 F.3d at 648. When an exhibit to the complaint "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). "That is not to say that a plaintiff cannot contradict the apparent meaning or significance of a document or other exhibit." *Id.* "But a plaintiff whose case relies on contradicting such an attachment needs to explain her position." *Id.*

## ANALYSIS

Lakeside's motions to dismiss turn on whether Steel King sufficiently alleges that Lakeside waived its right to limit its contribution liability to the amount of its liability under the Illinois Workers' Compensation Act ("IWCA"), 820 ILL. COMP. STAT. 305/1 *et seq.* ('4339, R. 224, Mot. at 2; *id.*, R. 369, Resp. at 2.) Under Illinois law, an employer's contribution liability is generally limited to the employer's liability under the IWCA. *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023, 1028 (Ill. 1991); *see also McMackin v. Weberpal Roofing, Inc.*, 959 N.E.2d 186, 191 (Ill. App. Ct. 2011) ("[A]n employer's maximum liability in a third-party suit for contribution is limited to its liability to its employee under the Workers' Compensation Act."). An employer, however, can waive this limitation on contribution liability. *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1301 (Ill. 1997); *see also Estate of Willis v. Kiferbaum Constr. Corp.*, 830 N.E.2d 636, 641 (Ill. App. Ct. 2005) ("[A] party who agrees to waive *Kotecki* as an affirmative defense voluntarily assumes contribution liability in excess of the limitations provided under the Compensation Act.").

In certain circumstances, Illinois courts have construed indemnification provisions to result in waiver of an employer's right to limit its contribution liability to the amount it is liable under the IWCA.[2] *See Cooley v. Power Constr. Co., LLC*, 107 N.E.3d 435, 440 (Ill. App. Ct. 2018) ("A subcontractor's agreement to indemnify the general contractor and hold it harmless for claims resulting from the performance of the subcontractor's work waives the affirmative defense that the subcontractor might have otherwise had for limited liability under the Workers' Compensation Act."). For example, an indemnification provision resulted in a waiver of the right to limit contribution liability where an employer agreed to indemnify a potential joint tortfeasor for injuries caused in whole or in party by the employer without regard to "workmen's compensation acts." *E.g., Estate of Willis*, 830 N.E.2d at 642. Other cases have not required a specific reference to workers' compensation law in the parties' indemnification agreement for waiver to result if the indemnification provision is sufficiently broad. *E.g., Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 972-73 (1997) (indemnification provision resulted in waiver of the cap on employer's contribution liability where the indemnification provision required the employer to indemnify the alleged joint tortfeasor for "all loss or the payment of all sums of money by reason of all accidents . . . that may happen or occur" in connection with the parties' performance under their contract); *Avalos v. Pulte Home Corp.*, No. 04 C 7092, 2006 WL 3813735, at *9 (N.D. Ill. Dec. 22, 2006) (indemnification provision resulted in waiver of contribution liability cap where it required the employer to indemnify and hold harmless the

---

[2] Lakeside cites several Illinois cases dealing with waiver of a workers' compensation lien, which is an entirely different matter than waiver of Illinois' limitation on an employer's contribution liability. *See Cooley v. Power Constr. Co., LLC*, 107 N.E.3d 435, 442 (Ill. App. Ct. 2018) ("The *Kotecki* cap is a limitation on liability—the workers' compensation lien is not. [Defendant] argues that 'a workers' compensation lien is both a statutory right to reimbursement and also a statutory limitation of liability.' The former assertion is accurate, but the latter is not."). Lakeside also cites an unpublished, non-precedential case to support its argument, *Fleck v. W.E. O'Neil Constr. Co.*, Nos. 1-15-1108, 1-15-2365, 2016 WL 6908409 (Ill. App. Ct. Nov. 23, 2016), which is not binding authority and unpersuasive because that case involved a decision after a jury verdict, not a decision addressing the sufficiency of the parties' allegations. (*See* '4339, R. 224, Mot. at 4-7.)

potential joint tortfeasor "against all liability," which indicated an intent that the employer would assume full liability for damages commensurate with the employer's relative degree of fault). In other cases, broad indemnity provisions have been found to be unenforceable and ineffective to waive Illinois' limit on contribution liability where those indemnity provisions would require an employer to indemnify another party for its own negligence. *E.g., Burke v. John Maneely Co.*, No. 14-CV-285, 2016 WL 454330, at *4-6 (N.D. Ill. Feb. 5, 2016).

Turning to the allegations in this case, the parties dispute whether the indemnification language alleged in Steel King's amended third-party complaint was in effect and binding as to the parties, ('4339, R. 224, Mot. at 2; *id.*, R. 369, Resp. at 3-4; *id.*, R. 380, Reply at 5-7), which is a dispute that the Court cannot resolve on a motion to dismiss. *See Reed*, 906 F.3d at 549. This alone is enough for the Court to deny Lakeside's motions to dismiss. *See id.*; *Elward v. Electrolux Home Prods., Inc.*, 264 F. Supp. 3d 877, 892 (N.D. Ill. 2017) (denying motion to dismiss where the Court would have to resolve factual disputes to determine whether contractual provisions were unconscionable).

Even if the indemnification provision alleged in Steel King's amended third-party complaint was binding and in effect, however, the provision requires Lakeside to "indemnify, defend, and hold harmless" Steel King "from and against any claim, liability, loss, damage, lien, judgment . . . and cost, including attorneys' fees and litigation expenses, *arising out of . . . [Lakeside's] failure to comply with any of its obligations under [the purchase order.]*" ('4339, R. 138-1 at 11, NVA Form & Purchase Order (emphasis added); '7335, R. 103-1 at 11, NVA Form & Purchase Order (emphasis added).) Steel King plausibly alleges circumstances in which Plaintiffs' injuries and their lawsuits arose out of Lakeside's failure to comply with the purchase order, ('4339, R. 138, Am. Third-Party Compl. ¶ 4; '7335, R. 103, Am. Third-Party Compl. ¶ 4),

and therefore Steel King plausibly alleges that the purchase order's broad indemnity provision waives Lakeside's cap on contribution liability. *See Liccardi*, 687 N.E.2d 968, 972-73; *Avalos*, 2006 WL 3813735, at *9. As both parties suggest, ('4339, R. 369, Resp. at 4; *id.*, R. 380, Reply at 5-6), however, it is premature to conclusively decide whether the alleged indemnification provision applies in this case or results in a waiver of limits on contribution liability without knowing whether Plaintiffs' injuries arose out of Lakeside's failure to comply with the Steel King purchase order or some other cause unrelated to the purchase order. For purposes of the motions before the Court, however, Steel King pleads enough facts to plausibly support its waiver claims and survive a motion to dismiss. *See Reed*, 906 F.3d at 549.

Thus, the Court denies the motions to dismiss. The Court also denies as premature Steel King's request for the Court to find as a matter of law that Lakeside waived its limitation on contribution liability.[3] For example, the Court cannot determine by only considering Steel King's allegations whether the indemnification agreement is invalid because it requires Lakeside to indemnify Steel King for Steel King's own negligence. *See Burke*, 2016 WL 454330, at *4-6; *see also Liccardi*, 687 N.E.2d at 972-73 (explaining that, "[w]hether a contract violates public policy depends on the peculiar facts and circumstances of each case, as well as the language of the contract itself," and weighing whether the indemnified party knew the indemnification provision was void in violation of public policy and whether that party ever believed it was entitled to indemnification for its own negligence). At bottom, deciding Lakeside's contribution liability based on the parties' pleadings is inappropriate, and the Court denies Steel King's and Lakeside's invitations to do so. *See Kotecki*, 585 N.E.2d at 1028 ("Because this case is before us

---

[3] Steel King's request to enter judgment as a matter of law in its favor, in any event, is procedurally improper because Steel King has not filed a motion seeking such relief. A party seeking judgment as a matter of law must move for such relief, rather than request such relief in a response brief, so that the nonmoving party has notice and a reasonable time to respond. *See* FED. R. CIV. P. 56(a), (f).

at the pleading stage, it would be inappropriate to consider whether [a party] is liable to [another] for contribution, and how much that liability should be. Resolution of these questions will depend upon the facts as developed at trial."); *see also Russum v. ISG Riverdale, Inc.*, No. 04 C 2924, 2006 WL 2524138, at *4 (N.D. Ill. Aug. 30, 2006) ("[T]he status of the underlying suit is critical in determining the ability of a third party plaintiff to maintain a contribution action.").

## CONCLUSION

For these reasons, Lakeside's motions to dismiss ('4339, R. 224; '7335, R. 188) are DENIED. The parties are again encouraged to exhaust all settlement possibilities before trial.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 14, 2019**