**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-4339 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| AMAZON.COM, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Claimant Taxman, Pollock, Murray, Bekkerman, LLC's ("Claimant" or "TPMB") motion to strike [456] is denied, and Plaintiff's motion to adjudicate the Claimant's *quantum meruit* attorneys' lien [434] is granted. The Court finds that TPMB is entitled to $69,825 in attorneys' fees.

**I.      Background**

This attorneys' fees dispute arises from a plaintiff's change of counsel partway through a personal injury suit. Plaintiff Andrew Woods, an ironworker participating in construction of a warehouse for Amazon, was injured when an industrial rack collapsed. See [28, at 3, 5]. Plaintiff retained the law firm Taxman, Pollock, Murray, Bekkerman, LLC on May 16, 2017, to represent him in matters related to his injuries under a contingency fee arrangement. TPMB filed a personal injury suit on Plaintiff's behalf on June 8, 2017. The case was originally assigned to the Judge St. Eve, who recused herself, and the case was reassigned to the Chief Judge Castillo. See [30]. TPMB represented Plaintiff in the matter for the following five or six months. Between June and November 16, 2017, TPMB filed two amended complaints (see [6] and [28]), submitted status

reports, attended status hearings, and replied to affirmative defenses (see [39-41]). TPMB also sent attorneys' liens to defendants. See [434-1, at 2-7]. The parties did not engage in discovery during that time.

On November 16, 2017, TPMB received a letter from Plaintiff terminating the representation and directing TPMB to cooperate with his new attorneys, the firm of Anesi, Ozmon, Rodin, Novak, & Kohn, Ltd ("Anesi"). [450-1, at 34-35.] Marc Taxman, a partner at TPMB, acknowledged receipt of Plaintiff's letter that same day. [453-1, at 7-8.] TPMB turned over Plaintiff's client file to Anesi on November 17, 2017, though the parties disagree on what the file contained. See [453-1, at 1-3; 455-1, at 2-3].

On November 28, 2017, Chief Judge Castillo held a status hearing, at which TPMB sought to have the judge "vet the facts regarding TPMB, LLC's discharge." [458-3, at 12.] The Court declined. TPMB filed a motion to withdraw [72] on December 4, 2017, which the Court granted on December 11, 2018 [78]. The case proceeded through discovery and dispositive motions practice to trial, with Anesi representing Plaintiff. The case settled on the fifth day of trial, August 23, 2019.

On September 9, 2019, Plaintiff, through Anesi, filed a motion to adjudicate TPMB's *quantum meruit* attorneys' liens [434]. Partway through the briefing, the case was transferred to the undersigned, following Chief Judge Castillo's retirement. [447.] Lacking contemporaneous billing records, TPMB submitted a reconstructed chronology of its work on the case. See [458-3, at 2-13]. TPMB also filed a motion to strike [456] several paragraphs from an affidavit [453-1] in support of Anesi's reply brief, submitted by Mark Novak, a partner at Anesi. Neither party's briefs requested an evidentiary hearing, and Plaintiff's reply brief in support of his motion contained objections to much of the work for which TPMB seeks compensation. *Royce v. Michael R. Needle*

*P.C.*, 950 F.3d 481, 488 (7th Cir. 2020) ("A district court is not required to hold an evidentiary hearing on attorney's fees where a party has an opportunity to respond and make specific objections to the fee petition.") (citing *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 709 (7th Cir. 2001)). Thus, the issues presented in the motion to adjudicate *quantum meruit* attorneys' liens [434] and the motion to strike [456] are ripe for decision.

## II.    Legal Standard

Motions to strike are "disfavored," because they "potentially serve only to delay," except where they "remove unnecessary clutter from the case"). *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) ("Motions to strike disserve the interest of judicial economy. The aggravation [they cause one's opponent] comes at an unacceptable cost in judicial time."). A district court's ruling on a motion to strike an affidavit or statement of facts is reviewed for an abuse of discretion. *Marshall v. Local 701 Int'l Bhd. of Elec. Workers*, 387 F. App'x 623, 626 (7th Cir. 2010).

"*Quantum meruit* is a quasi-contract doctrine that allows the Court to imply the existence of a contract in order to prevent injustice." *Langone v. Miller*, 631 F. Supp. 2d 1067, 1071 (N.D. Ill. 2009) (citing *Hayes Mech., Inc. v. First Indus.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004)).[1] To state a claim for *quantum meruit*, the plaintiff must plead that (1) he performed a service to the benefit of the defendant; (2) he did not perform this service gratuitously; (3) the defendant accepted this service; and (4) no contract existed to prescribe the payment for this service. *Langone*, 631 F. Supp. 2d at 1071 (citing *Installco, Inc. v. Whiting Corp.*, 784 N.E.2d 312, 318 (2002); *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 908 (1998)). The burden of proof is on the attorney

---

[1] In contractual/quasi-contractual matters such as this, state law is to be applied to the dispute. *Dobbs v. Depuy Orthopaedics, Inc.*, 885 F.3d 455, 457 (7th Cir. 2018); *Production Process Consultants, Inc. v. Wm. R. Hubbell Street, Corp.*, 988 F.2d 794, 795-796 (7th Cir. 1993).

to establish the value of his services. *Thompson v. Buncik*, 961 N.E.2d 280, 283, as modified on denial of reh'g (Dec. 29, 2011) (citing *McHugh v. Olsen*, 545 N.E.2d 379, 382 (1989)).

Under Illinois law, the trial court has broad discretion in matters of attorneys' fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case. *Royce*, 950 F.3d at 487 (citing *Kannewurf v. Johns*, 632 N.E.2d 711, 716 (1994)); see also *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 911 N.E.2d 1180, 1187 (2009) ("The trial court has broad discretionary powers in awarding reasonable attorneys' fees and its determination is based on the evidence presented by the parties."). The relevant factors in assessing a fee award include "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients." *Kannewurf*, 632 N.E.2d at 717 (emphasis omitted). Review of a district court's award of attorneys' fees is deferential, for a number of reasons: "the district court has a more complete picture of the case as a whole; the issues tend to be factual matters for which appellate review is limited; the accuracy of the ultimate decision is not likely to be enhanced by frequent and detailed appellate review; and it would be wasteful to engage in a second major litigation over attorneys' fees." *Lock Realty Corp. IX v. U.S. Health, LP,* 707 F.3d 764, 773 (7th Cir. 2013) (quotation omitted).

## III.    Analysis

### A.    *Motion to Strike*

TPMB argues that paragraphs 5 through 8 of Michael Novak's affidavit [453-1, at 2] in support of Plaintiff's reply should be stricken for lack of personal knowledge, citing Federal Rule of Evidence 602 ("FRE 602"). Those paragraphs state the date on which Anesi received the client

4

file from TPMB, describe the contents of the file (including the number of pages of documents or categories of documents in the file), and assert that the file did not contain certain memos, emails, draft discovery responses, or materials produced by the defendants in discovery. [*Id.*]  According to TPMB, "Novak does not state who from Anesi received the file from TPMB, who reviewed the file, when the file was reviewed and if an inventory of the file was made," and therefore Novak cannot say what documents were or were not in the file when TPMB turned it over to Anesi. [456, at 2.]  TPMB frames this argument as a motion to strike under Federal Rule of Civil Procedure 56(e). [*Id.* at 1.]

First, it is not clear that Federal Rule of Civil Procedure 56 ("FRCP 56") applies here. FRCP 56 deals with summary judgment, a stage this case has long passed.  Furthermore, FRCP 56 "allows a party to object to record evidence in a summary judgment proceeding that could not be presented in an admissible form at trial but does not expressly provide a means to strike material." *Khungar v. Access Cmty. Health Network*, 2020 WL 2219046, at *10 (N.D. Ill. May 7, 2020) (citing Fed. R. Civ. P. 56(c)(2), (4)).  So even if FRCP 56 did apply here, a motion to strike is probably not an appropriate way for TPMB to proceed, which makes the Court reluctant to grant TPMB motion.

The motion to strike is essentially an objection that that paragraphs 5 through 8 of the Novak affidavit do not meet FRE 602's requirement that testimony be based on personal knowledge, plus an argument that the Court should not rely on those paragraphs in deciding the attorneys' fees question.  (This type of objection is what FRCP 56(c)(2) allows, so the Court understands why TPMB framed the argument as an FRCP 56 issue.)  The fact that this issue is an evidentiary one also counsels against striking portions of the affidavit.  "The Court is 'able to sift through the evidence and to consider each piece under the applicable federal rules' without going

to the additional work of editing and striking out portions of the parties' declarations." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 WL 6092636, at *3 (N.D. Ill. Oct. 19, 2016) (quoting *Martin v. Ft. Wayne Police Dep't*, 2011 WL 781383, at *5 (N.D. Ind. Feb. 28, 2011). For these reasons, the motion to strike is denied.

The Court next turns to TPMB's underlying FRE 602 arguments, for two reasons. First, TPMB loses the FRE 602 argument, which is an alternate ground for denying the motion to strike. Second, the Court resolves this issue in order to be clear that it did consider the Novak affidavit, in addition to all the other evidence submitted to the Court, in determining what attorneys' fees TPMB is entitled to.

In relevant part, FRE 602 reads, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. As several Courts in this district have found, an affiant's personal knowledge may be inferred from the affidavit itself, and in determining whether to make such an inference, the Court can consider a variety of factors, including the position of the affiant as well as his involvement in the matters he testifies to. *Ladenberger v. Gen. Signal Pump Grp./Aurora Pump*, 2001 WL 586497, at *1 (N.D. Ill. May 31, 2001) (citing *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) ("That Rule 56(e)'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves."); see also *McKay v. Town & Country Cadillac, Inc.*, 2002 WL 1285065, at *21 (N.D. Ill. June 7, 2002); *Doolin v. United States*, 1994 WL 233829, at *1 (N.D. Ill. May 23, 1994). Several other courts of appeals have reached the same conclusion. See, *e.g.*, *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 418 (1st Cir. 2017) ("[A] reading of the affidavits demonstrates that all three affiants did have personal knowledge

6

about the facts they were swearing to, despite not explicitly stating so."); *Jacobs v. Wilkinson*, 156 F.3d 1230 (6th Cir. 1998) ("Whether an affidavit meets the requirements of personal knowledge and competence can be inferred from its contents."); *Roberts v. Cessna Aircraft Co.*, 289 F. App'x 321, 324 (10th Cir. 2008) ("[T]he personal knowledge of the affiant required by Rule 56(e) may be inferred from the context of the affidavit.").

A case similar to the one before this Court suggests that the Seventh Circuit also endorses this perspective. In *Lock Realty Corp. IX v. U.S. Health, LP*, the plaintiff received a judgment in its favor and plaintiff's counsel moved for an award of attorneys' fees. 707 F.3d 764, 767 (7th Cir. 2013). The motion included an affidavit by plaintiff's lead attorney in support of awarding fees, and the defendants moved to strike a paragraph from the affidavit under FRE 602 on the grounds that the affiant lacked personal knowledge of the contents of that paragraph. *Id.*, at 773. The district court denied the motion to strike, and the Seventh Circuit affirmed, finding that "the affidavit taken as a whole amply demonstrated that [the affiant] had personal knowledge of the facts presented in the affidavit* * *." *Id.*

Here, the Court considers the Novak affidavit as a whole, including its exhibits, and determines that Novak has sufficient personal knowledge to support paragraphs 5 through 8 of his affidavit. Novak's affidavit—in fact, the paragraphs TPMB challenges—state when TPMB turned over the client file to Anesi, describe the contents of the client file in some detail, and note a few categories of documents that did not appear in the file. [453-1, at 2.] That description suggests at least some familiarity with the client file. See *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir.1990) (personal knowledge may be inferred from the affidavit itself). Furthermore, Novak is a member and Chairman of the law firm Anesi, Ozmon, Rodin, Novak & Kohen, Ltd. [453-1, at 1.] When Andrew Woods wished to discharge TPMB and substitute Anesi, Novak

handled Anesi's communications with TPMB —specifically, with Taxman—about the discharge and transfer of the client file. [453-1, at 1-2, 4-8.] When the docket showed a filing from a defendant that was not contained in the client file that TPMB had turned over, Novak contacted Taxman to ask about it. [*Id.* at 9-10.] From Novak's "position[] and the nature of [his] participation in the matters to which [he] swore," the Court may also reasonably infer that Novak had personal knowledge of the contents of the client file that TPMB produced to Anesi. *Barthelemy*, 897 F.2d at 1018; *Ladenberger v. Gen. Signal Pump Grp./Aurora Pump*, 2001 WL 586497, at *1 (N.D. Ill. May 31, 2001). Accordingly, to the extent that TPMB raises an objection to the Novak affidavit under FRE 602, the objection is overruled.

### B.    *Motion to Adjudicate Quantum Meruit Attorneys' Liens*

In Illinois a discharged attorney may recover on a *quantum meruit* basis a reasonable fee for services rendered before discharge. *Much Shelist Freed Denenberg & Ament, P.C. v. Lison*, 696 N.E.2d 1196, 1200 (1998). This rule applies to contingency fee arrangements as well. "When an attorney-client relationship that was originally established under a contingent fee contract terminates, the contract no longer exists and neither party can therefore seek to enforce the terms of the nonexistent contract." *Forest Pres. Dist. of Cook Cty. v. Cont'l Cmty. Bank & Tr. Co.*, 98 N.E.3d 459, 472 (Ill. App. Ct. 2017). Instead, "when the attorney has withdrawn and the court finds the attorney justifiably withdrew from the case, then the attorney is entitled to proceed on a claim to recover fees based on *quantum meruit*." *Id.*; *Kannewurf*, 632 N.E.2d at 716 (holding attorney that withdrew from case "was entitled to the reasonable value of his services up to the date of withdrawal"); *Leoris & Cohen, P.C. v. McNiece*, 589 N.E.2d 1060, 1065 (1992) ("If the court finds that the plaintiff justifiably withdrew from the case, then the plaintiff will be allowed to proceed on its claim for fees on a *quantum meruit* basis."). Under a *quantum meruit* theory, the

trial court is to award, as the term literally means, "as much as he deserves." *Lee v. Ingalls Mem'l Hosp.*, 597 N.E.2d 747, 749 (1992).

The burden of proof is on the attorney to establish the value of his services. *Thompson v. Buncik*, 961 N.E.2d 280, 283, as modified on denial of reh'g (Dec. 29, 2011) (citing *McHugh v. Olsen*, 545 N.E.2d 379, 382 (1989)). Only those fees which the court finds reasonable will be awarded to the attorneys. *Kaiser v. MEPC Am. Properties, Inc.*, 518 N.E.2d 424, 427 (1987). The relevant factors for determining the reasonableness of claimed attorneys' fees include "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients." *Kannewurf*, 632 N.E.2d at 717 (emphasis omitted). The benefit to the client is a key point in analyzing fees on a *quantum meruit* basis: "The theory of recovery in *quantum meruit* is that a party has received a benefit which would be unjust for him to retain without paying for it. Therefore, in order to recover in *quantum meruit,* it is essential that the services performed by the claimant must be of some measurable benefit to the person from whom recovery is sought." *Bank of Alton v. Bowman*, 555 N.E.2d 997, 998 (1990). In analyzing these factors, the court "is not limited to the evidence presented in arriving at a reasonable fee but may also use the knowledge it has acquired in the discharge of professional duties to value legal services rendered." *Johns v. Klecan*, 556 N.E.2d 689, 695 (1990).

In this matter, the Court has reviewed the motion to adjudicate *quantum meruit* attorneys' lien [434, 434-1] and related briefs and materials [450, 453, 453-1, 453-2, 453-3, 455, 455-1], the motion to strike [456], and the TPMB's amended verification [458], which includes the chronology of work for which it seeks payment. The Court reviewed each specific claim in the chronology

that Plaintiff objected to. Though the Court generally disfavors line-by-line assessments of bills in fee disputes (because that contributes to the matter becoming a "second major litigation" that the Seventh Circuit has called wasteful (*Lock Realty Corp. IX,* 707 F.3d at 773)), such a detailed analysis is warranted here. The undersigned is the third judge to have been assigned this case, after the first judge recused herself (see [30]) and the second judge shepherded the case to trial and settlement (see [428]) before he retired (see [447]). Since this Court did not have the chance to observe the attorneys' work during the litigation, it must carefully examine the evidence substantiating that work now**.** *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1050 (7th Cir. 2016) (district court abused its discretion in awarding full contingency fee in *quantum meruit* claim because it "did not have firsthand knowledge about the litigation giving rise to [the] claim for attorneys' fees" and failed to "to analyze the factors Illinois courts have held are important when awarding attorneys' fees under *quantum meruit*"); see also *Shakman v. Democratic Org. of Cook Cty.*, 634 F. Supp. 895, 899 (N.D. Ill. 1986) ("In the instances where contemporaneous time records were not available, plaintiffs' affidavits provide, by their own representation, conservative estimates of work done. * * * However, such representations of conservative estimates are no substitute for well documented time records. Therefore, the Court has conducted an item-by-item accounting * * * of plaintiffs' attorneys' time records.").

Anesi's objections focus on whether TPMB actually performed the work listed on the chronology and whether the work was of benefit to the client, and TPMB's responses focus on those issues as well. Anesi and TPMB also disagree on the usual and customary hourly rate for services in personal injury or tort cases and whether the rates that TPMB requests fall within that range. TPMB has not suggested that the underlying case contained novel or particularly difficult legal issues, and the attorneys who worked on the case for TPMB appear to be experienced and

10

competent counsel. See [450-1, at 37-46]. Of the fee award factors identified in Illinois law, the dispute—and therefore the Court's analysis—centers on the work performed, its benefit to the client, and the reasonableness of the attorneys' rates.

### 1. Hours Claimed

Anesi challenges many of the time entries TPMB submitted on a variety of grounds, and the Court reviewed each challenged entry. The Court addresses the categories of Anesi's objections below. A table showing the Court's conclusions regarding individual time entries and calculations of compensation is at Appendix A.[2]

*TPMB's letters to certain defendants*

TPMB requests compensation for drafting three letters to defendants on May 22, 2017. Appendix A, entries 15-17. Anesi argues that these letters are notices of attorneys' liens, which benefit TPMB and not the client, and therefore TPMB should not be paid for time spent preparing these letters. See [434-1, at 2-7]; *Bank of Alton*, 555 N.E.2d at 998. TPMB argues the letters are also litigation holds, which are important for preserving evidence, and justify compensation. The Court's review of the letters shows that at least half of the content is related to attorneys' liens, which benefit TPMB and not the client, so the Court reduces the hours claimed for each of these entries from 0.5 to 0.25.

---

[2] The table was created from the chronology of work that TPMB submitted. [458-3, at 2-13.] The Court converted the chronology to a format more conducive to review and made no changes to the content other than formatting changes. Data in the "Date," "Attorney," "Hours Claimed," and "Description of Work" columns are taken directly from TPMB's chronology. The "Hours Substantiated," "Hourly Rate," and "Reasonable Fee" columns are the Court's determinations. The attorney initial sin the "Attorney" column are as follows. MAT is Mark A. Taxman. BNP is Bradley N. Pollock. SPM is Sean P. Murray. HAH is Haig A. Hamidian. LJS is Lindsay J. Scheidt.

*Time spent preparing amended complaints*

Anesi argues that the time TPMB spent preparing the first amended complaint (Appendix A, entries 48 and 49) and the second amended complaint (Appendix A, entries 93 and 94) is excessive in light of the small changes to each version of the complaint. Beginning with entries 48 and 49, it is true that the changes to the text in the first amended complaint are not large, but they are in response to an order from the Court [5]. They are also legally significant because they establish subject matter jurisdiction, which prevented the complaint from being dismissed, an obvious benefit to the client. The five hours that two attorneys took to research factual and legal issues in response to a court order could be on the long side, but the Court does not believe that it was an excessive amount of time, so the Court declines to strike these time entries.

Turning to the second amended complaint, entries 93 and 94, Anesi again argues that the claimed time (a total of seven hours for two attorneys) is excessive in relation to the minor changes to the complaint (correcting or adding a defendant corporation's name in four paragraphs). [453, at 7-8]. TPMB responds that these time entries include a meet-and-confer with defendants' counsel, as described in the motion for leave to file [24]. See [455, at 8]. Though the time entry says nothing about a meet-and-confer, the motion for leave to file does describe such a meeting and the need to correct the name of one of the defendant corporations. See [24]. TPMB has established that it did the work described and that the work benefited the client. The Court does not believe that seven hours across two attorneys is excessive for a meet-and-confer plus revising and refiling a complaint, so the Court declines to reduce these time entries.

*Missing or absent documents*

Anesi says that many documents mentioned in TPMB's chronology were not included in the client file that TPMB turned over, and that other work that TPMB claims to have performed

did not generate any work product (or if it did, that work product was not in the client file). According to Anesi, the work in those entries on the chronology did not benefit the client and therefore is not compensable.

TPMB's responses are varied. TPMB moved to strike paragraphs from the affidavit of Mark Novak, through which Anesi attempted to establish what was and was not contained in the client file. See [456]. The motion to strike attached many documents in support of TPMB's argument that it provided a complete client file, but those attachments did not resolve many of Anesi's objections. A few of the attachments are materials Anesi says were not included in the client file, such as OSHA materials that Marc Taxman says he reviewed on June 9, 2017. [455-1, at 59.] But some attachments were documents that Anesi agreed were in the file,[3] some were documents that Anesi had not identified as missing,[4] and some the Court cannot identify, including difficult-to-read, handwritten notes.[5] Additionally, the attachments did *not* include certain documents that Anesi identified as missing.[6] TPMB did not provide an index of the attachments, or descriptions of specific attachments, or—most importantly for TPMB's burden—any explanation of how specific attachments answer Anesi's claims that the client file did not contain certain documents.

---

[3] *E.g.*, a June 26, 2016 email from an investigator regarding the case [455-1 at 22], and a July 17, 2017 email from Marc Taxman to Patrick Garvey regarding Duke Realty's full corporate name [455-1, at 21].

[4] *E.g.*, Anesi did not allege that the initial joint status report was not contained in the client file. [455-1, at 5-11].

[5] *E.g.*, [455-1, at 26, 35].

[6] *E.g.*, a May 22, 2017 case status memo (Appendix A, entry 13), Plaintiff's medical records from the Rush Copley emergency room (Appendix A, entry 45), and City of Aurora Fire Department EMT records (Appendix A, entry 46).

Furthermore, TPMB did not provide any evidence that the attachments (or the remainder of the absent documents) were actually turned over to Anesi. The relevant portion of Taxman's affidavit reads, "I have reviewed my records in this matter. In reviewing my records, I have found the electronic copies of the documents that were provided to Anesi. I attached the records that Plaintiff argues were not in the file that was provided to Anesi…."[7] [455, at 8.] But the affidavit does not quite say that TPMB provided those attachments to Anesi on November 17, 2017, as part of the client file. Strangely, TPMB argues in its surreply that even if the Court considered Novak's affidavit and his description of the client file's contents, "it is *impossible* to conclude from the evidence what the file contained at the time it was produced to Anesi." [455, at 8] (emphasis added). But TPMB bears the burden of proving that it performed work for the client and that the work benefited the client. If it is impossible to conclude what documents TPMB turned over to Anesi, it is far more difficult—if not impossible—for TPMB to meet its burden of proof with regard to the documents Anesi says were absent.

The Court now turns to specific objections based on a lack of documentation. In several instances, TPMB failed to meet its burden of proving that it created performed work or documents, or that it turned them over to Anesi such that the work could benefit the client, and the Court reduces TPMB's requested hours and compensation accordingly, as described below.

- Entries 1 and 2: "TPMB, LLC retained by Andrew Woods; Travel to meeting at client's house in Earlville, IL; Write-up case and interview client; Retainer signed - contingency fee 33.33%; Medical Authorizations signed."

Though Anesi objects that the case write-up (which the Court infers is the document at [455-1, at 48-53]) was not in the client file, much of the time in these entries was spent on other activities, and the write up was likely useful to TPMB during its representation of the client, and therefore

---

[7] The last statement is not entirely accurate; the attachments do not include several documents that Anesi identified as missing from the client file, such as a May 22, 2017 case status memo (Appendix A, entry 13).

beneficial to the client. But TPMB does not provide evidence that it turned over the write up to Anesi. To balance the work Anesi does not challenge with TPMB's failure to meet its burden regarding the write up, the Court reduces each attorney's claimed time in entries 1 and 2 from 8.0 hours to 7.5 hours.

- Entries 8 and 9: "Web research on Amazon"

Anesi objects that because the client file contains no notes, assembled documents, or memoranda regarding this research, TPMB has failed to prove that the work occurred or was beneficial to the client. The Court agrees that TPMB has failed to substantiate this time entry, and the sparse description does not allow the Court to assess what work was completed, its difficulty, or the benefit to the client.[8] These entries are reduced to 0 hours.

- Entry 13: "SPM prepared a case status Memo (4 pages)"

TPMB has not produced evidence that it created this document or turned it over to Anesi. Therefore, the Court reduces this entry to 0 hours.

- Entry 20: "MAT Memo to file RE; Meeting at Jack Keck's house in Yorkville, IL (1Page)"
- Entry 21: "Email from SPM RE: Speaking to Andrew Woods on 6/2/17"

TPMB did produce evidence that it created these two documents ([455-1, at 47 and 25]), but not that it produced the documents to Anesi. Therefore, the Court reduces the hours claimed by half for each of these entries.

- Entry 44: "Researched and reviewed OSHA Standards: OSHA 3220 Warehousing Worker Safety Services (15 pages), OSHA 2236 Materials Handling and Storage (41 pages)"

---

[8] "The district court has broad discretion to strike * * * vague or unjustified billing entries." *Montanez*, 755 F.3d at 555–56 (affirming district court decision rejecting vague billing entries, such as "call to client"); see also *Pouncy v. City of Chicago*, 2017 WL 8205488, at *8 (N.D. Ill. Dec. 11, 2017) (finding that "[d]escriptions such as 'draft LTR to client,'" too vague to support award of attorney's fees).

TPMB attached these documents to its surreply (see [455-1, at 59]), but has not identified any notes or memoranda from its review, much less notes or memoranda that it turned over to Anesi. Therefore, the Court reduces the hours claimed by half.

- Entry 45: "Reviewed RUSH Copley Emergency Room Records (39 pages)"
- Entry 46: "Reviewed City of Aurora Fire Department EMT Records"

Anesi objects that because the client file does not contain these documents, or notes or memoranda about them, TPMB has failed to prove that the work occurred or was beneficial to the client. The Court agrees that TPMB not substantiated these time entries and reduces their hours to zero.

- Entry 47: "Researched and reviewed Steel King 'Built to Deliver / Designed to Perform' (12 pages)"

TPMB attached these documents to its surreply (see [455-1, at 115]), but has not identified any notes or memoranda from its review, much less notes or memoranda that it turned over to Anesi. Therefore, the Court reduces the hours claimed by half.

- Entry 50: "Located, reviewed and downloaded Steel King Videos: 'About Steel King Industries' 2:23; 'Safety Systems' 1:23; 'Time Lapse Installation' 1:24"

TPMB has produced no evidence that it turned over these videos, or any notes or memoranda from their review, to Anesi. Taxman's chronology says he downloaded the videos and his affidavit asserts that he gave an electronic copy of the client file to Anesi [458, at 2-3], so TPMB's objection that "the video could not be in the file" rings hollow. [455, at 7.] For failing to substantiate this time entry, the Court reduces the claimed hours to 0.

- Entries 51 and 52: "Investigation Report reviewed (report contained the following witnesses): Adam Medlin, Jerry Grygiel, Phil Piel, Brian Elliott"
- Entries 81 and 82: "Received and reviewed Development Agreement (12/5/16) between Duke Realty Limited Partnership and Amzaon.com.dedc.LLL (136 pages)"
- Entries 83 and 84: "Received and reviewed Lease Agreement between Duke Realty Limited Partnership and Amzaon.com.dedc.LLL (121 pages)"
- Entries 85 and 86: "Received and reviewed Amazon Documents: Amazon 188 Employee Statement Adam Medlin; Amazon 189 Chris Berardino Foreman's

Report of injury Lakeside Adam Medlin; Amazon 190 Chris Berardino Foreman's Report of injury Lakeside Mike Johnson; Amazon 191 Chris Berardino Foreman's Report of injury Lakeside Andrew Woods; Amazon 192 Safety Meeting Sign-in 5/15/17"

- Entry 90: "Web Research on Duke realty Limited Partnership 4:38pm"

Anesi objects that because the client file does not contain these documents, or notes or memoranda about them, TPMB has failed to prove that the work occurred or was beneficial to the client. The Court agrees that TPMB has failed to substantiate these time entries and reduces their hours to 0.

- Entry 164: "Email from SPM RE: speaking to Andrew Woods on 10/31/17"

TPMB submitted evidence that it created this document ([455-1, at 23]), but not that it produced the email to Anesi. Charging thirty minutes for the five-line email at issue also strikes the Court as excessive. *Pouncy v. City of Chicago*, 2017 WL 8205488, at *9 (N.D. Ill. Dec. 11, 2017) ("In determining the reasonable number of hours, a court should exclude hours that are excessive, redundant or otherwise unnecessary. In exercising this discretion, the court may properly rely on its own experience to estimate the time reasonably required for the work claimed.") (citations omitted). Therefore, the Court reduces the hours claimed by half for this entry.

- Entries 169 and 170: "MAT and SPM Worked on the Rule 26(a)(1) Initial Disclosure and Rule 26(a)(1) Documents"

TPMB's surreply attached a five-page draft Rule 26(a)(1) disclosure, which TPMB asserts was created between October 31 and November 16, 2017. [455-1, at 54-58.] Anesi objects that the draft disclosure was not in the client file, so the client could not have benefited from the work. TPMB does not appear to have served the disclosures on Plaintiff's behalf; Anesi was the firm to file a notice of Plaintiff's 26(a)(1) disclosures. See [69]. Nor has TPMB produced any evidence that it turned over the draft disclosures to Anesi or that the work otherwise benefited the client. TPMB has failed to substantiate these time entries and work's benefit to the client, so the Court reduces their hours to 0.

17

*Work performed on November 16, 2017, and later*

Anesi argues that the client terminated his relationship with TPMB on November 16, 2017, and TPMB should not be paid for work performed after termination of the relationship, because it did not benefit the client. TPMB argues that it owed duties to the client until the Court granted its motion to withdraw, which occurred on December 11, 2017 (see [77]), so it should be paid for work performed between receiving a termination letter and the Court's order granting the motion to withdraw.

TPMB's argument would be more persuasive if it had performed critical or time-sensitive work between November 16 and December 11. Instead, that work was largely reviewing defendants' Rule 26(a) disclosures and a "Master Purchase Agreement" between two of the defendants. See Appendix A, Entries 173-180. TPMB does not explain why its duties to the client required it to perform this work after receiving a termination letter. Furthermore, three hours of the claimed time (Appendix A, entry 181) was spent preparing for and delivering an argument that the Court "should vet the facts regarding TPMB, LLC's discharge" ([458, at 12]), which is obviously in TPMB's interest but not obviously of benefit to the client. Similarly, the time that two attorneys spent reviewing the Court's three-line minute entry [78] granting the motion to withdraw may have benefited TPMB, but TPMB has not explained how it benefits the client. Therefore, the Court denies the claims for work done on November 16, 2017 and later (Appendix A, Entries 173-181, and 184-185), with the exception of the time spent preparing the motion to withdraw, as that was a reasonable charge in the normal course of an attorney's representation of the client (Appendix A, entries 182-183).

2.    Attorneys' Rates

In the context of an award of attorneys' fees, a reasonable hourly rate is one that is "derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). If an attorney uses contingent fee arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 982 (N.D. Ill. 2012). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, (1984). If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. *Pickett*, 664 F.3d at 640 (citing *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 409 (7th Cir. 1999)).

The Court begins where TPMB does, with Mark Taxman. TPMB seeks a rate of $754.50 per hour for Mark Taxman. Taxman is a partner at TPMB (and former partner at Anesi) who has been practicing personal injury law for more than thirty years. [450, at 8; 455-1, at 134.] TPMB supports this hourly rate with two affidavits. The first is a brief statement from Phillip Reed, a partner and commercial litigator at Patzik, Frank & Samotny Ltd., establishing that his own rate is $570 per hour. [450-3, at 2.] Mr. Reed is an experienced and capable attorney, but his experience is in commercial litigation, not personal injury or even other tort cases, and TPMB does not explain why that experience is comparable to Taxman's beyond the unsupported assertion that "[t]he work of a personal injury attorney and a commercial litigator is quite similar." [455, at 9.] In short, the affidavit is too disconnected from the relevant facts of this dispute to have much probative value.

19

*Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (holding that district court properly disregarded "conclusory affidavit * * * merely opining on the reasonableness of another attorney's fees") (citing *Pickett,* 664 F.3d. at 647).

The second affidavit is a more detailed statement from Gabriel Aizenberg, a shareholder and commercial litigator at Greenberg Traurig, LLP, that was originally filed in a state court case. [450-4, at 2.] The affidavit avers that Aizenberg's average billing rate for the matter was $682.80 per hour. [450-4, at 5.] Again, although the affiant appears experienced and competent, TPMB does not explain how Aizenberg's commercial litigation work supports a $750 per hour billing rate for Taxman's personal injury work.

TPMB also submitted as support a version of the Laffey Matrix (see [450-5, at 2-3]) which is a table of hourly rates published by the U.S. Attorney's Office for the District of Columbia, which some circuits use to help determine a reasonable fee under fee-shifting statutes. *Montanez*, 755 F.3d at 554. The Seventh Circuit has been skeptical of applying the Laffey Matrix outside of Washington, D.C., (see *Pickett,* 664 F.3d at 649–51), and in any event Anesi points out that the version TPMB submitted is unofficial.[9] TPMB's surreply brief says it is not relying on any of the hourly rates listed on the Laffey Matrix (though it does us the Matrix in another way, described below). [455, at 10.]

Finally, TPMB's surreply argues that in 2015, when Taxman was a partner at Anesi, Anesi argued his hourly rate in a *quantum meruit* fee petition should be $500 per hour ([455-1, at 143]), though TPMB does not offer evidence that any court determined that $500 per hour was a reasonable rate. TPMB also asserts that Anesi in 2018 agreed that $750 per hour for Taxman's work was reasonable (see [455-1, at 132.]), though that email contradicts a filing Anesi made in

_____

[9] The official version is available here: https://www.justice.gov/usao-dc/page/file/1189846/download

the same case asserting that the usual and customary work for an attorney with the experience and reputation of Taxman is $500 per hour. [455-1, at 140.] These documents undermine Anesi's position that Taxman's work is worth at best $275 per hour (see below), even though they still fall short of establishing a prevailing rate of similarly experienced attorneys in the field or presenting evidence of fee awards that Taxman actually received in similar cases. See *Spegon*, 175 F.3d at 555.

In response, Anesi offered an affidavit from Michael Krause, a partner at Bollinger, Connolly, Krause, LLC, who has experience in personal injury cases, primarily on the defense side. [453-3, at 1.] The affidavit states that the normal rate for personal injury work in the Chicago area ranges from $235 to $275 per hour for a partner and $175 and $200 for an associate. *Id.* The affidavit is somewhat light on supporting details, which gives the Court pause in light of *Montanez* as noted above, but Krause's experience is in the relevant area of the law. TPMB argues, without citation, that the Court should disregard Krause's figures because "[i]t is well known in the legal community that insurance defense attorneys have suppressed hourly rates." [455, at 8-9.] [10]

The Court next looks to recent Seventh Circuit and Illinois cases awarding fees to attorneys in tort or personal injury cases. Two are on point. In 2015, the Seventh Circuit found that a "rate of $300 for partners and $180 for associates" for work in a personal injury lawsuit was not unreasonable. *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 420 (7th Cir. 2015). More recently, in *Coffman Law Offices, P.C. v. Damore*, No. 2-18-0649, 2019 WL 2005921, at *1 (Ill. App. Ct. May 6, 2019), the Illinois Appellate Court affirmed a fee award in a simple personal injury case to

---

[10] TPMB supported its reliance on commercial litigators' rates in party by arguing, "if TPMB cannot rely upon commercial litigators to arrive at a reasonable hourly rate, it would be left with nowhere else to turn." [455, at 10.] But TPMB could have turned to fee awards (not just requested rates) in its own cases, as its allusions to Taxman's asserted rates in other matters demonstrates. Or TPMB could have turned to fee awards to any other personal injury lawyers of similar prominence and experience in similar cases.

two attorneys: $350 per hour for an attorney with 30 years of experience, and $300 per hour for an attorney with thirteen years of experience. *Id.* To be sure, the Court's experience, both in practice and on the bench, confirm the common sense notion that not all lawyers of a given experience level have similar skill sets, and the particular lawyer in question here has been an accomplished litigator at leading personal injury firms during his career. His rate should be higher than the $300-$350 set out in the cases cited above.

Obviously, there is a wide gulf between the $235-$275 per hour suggested by Anesi, the $300-$350 per hour derived from the cases above, and the more than $750 per hour requested by TPMB. Lacking a firm basis for setting a rate based on what courts have awarded personal injury lawyers of similar experience and reputation in similar cases, the most compelling valuation in the record before the Court is the $500 per hour claim that Anesi itself made on Taxman's behalf a few years back when he was working with them. Anesi should not be able to easily walk away from its representation to another court in a *quantum meruit* claim asserted for the same kind of work in the same city during the same year. It seems very unlikely that Taxman's skills changed much in the short period of time between February 2017 when the Anesi firm was discharged in the *Richardson* litigation and the period later that year when Taxman and his colleagues were working on this case. Despite the plethora of paper filed by both sides in this case, the Court can find no better basis for setting the value of Taxman's work in this case than the asserts of his erstwhile colleagues—now adversaries—in a court-filed document when the benefits of his work redounded to their benefit. And for what it is worth, that figure also passes the Court's "eye" test for personal injury work in this District. While TPMB does not present compelling evidence supporting its argument for going any higher, Anesi can hardly cry foul for having been hoist on its own petard.

22

TPMB uses Taxman's rate as the basis for calculating the other attorneys' rates. Basically, TPMB wants the Court to apply a discount to Taxman's rate for each attorney who worked on the case, with larger discounts for less-experienced attorneys. The discount amounts come from differences between pay rates on the Laffey Matrix.[11] Though the method has some intuitive appeal, TPMB cites no authority supporting such a calculation of rates for attorneys' fees (or overcoming the Seventh Circuit's skepticism for the underlying Matrix). Instead, the Court will use what appears to be the standard method of awarding fees: determining a reasonable rate for partners and a reasonable rate for associates. This might be inappropriate if there were clear distinctions in the ability and experience among the partners who worked on the case, but in this instance, the three partners are all named partners in the firm and each has almost two decades (or more) experience practicing law. Accordingly, TPMB partners Mark Taxman, Brad Pollock, and Sean Murray will be compensated at $500 per hour.

TPMB associates Lindsay Scheidt and Haig Himidian also worked on this matter. The Court's experience and recent fee awards in personal injury cases in Illinois suggest that $300 per hour (or 60% of the partners' rate) is a reasonable rate for their work. See *Goesel*, 806 F.3d at 420 (in which reasonable associate rate of $180 per hour was 60% of reasonable partner rate of $300 per hour).

The Court applied these partner and associate hourly rates to the hours that TPMB substantiated, as detailed in Appendix A. In sum, TPMB is entitled to a *quantum meruit* award of $69,825 in attorneys' fees.

## IV. Conclusion

---

[11] *E.g.*, on the Laffey Matrix, an attorney with 30 years of experience has a rate of $595 per hour, and an attorney with 20 years of experience has a rate of $566 per hour, which is 95% of the more-senior attorney's rate. See [453-2].

For the reasons set forth above, TPMB's motion to strike [456] is denied, and Plaintiff's motion to adjudicate the Claimant's *quantum meruit* attorneys' lien [434] is granted. The Court finds that TPMB is entitled to $69,825 in attorneys' fees.

Dated: July 1, 2020

_____
Robert M. Dow, Jr.
United States District Judge

# Appendix A

| Entry No. | Date | Attorney | Hours Claimed | Hours Substantiated | Hourly Rate | Reasonable Fee | Description of Work |
|---|---|---|---|---|---|---|---|
| 1 | 5.16.17 | SPM | 8 | 7.5 | $500 | $3,750 | TPMB, LLC retained by Andrew Woods; Travel to meeting at client's house in Earlville, IL; Write-up case and interview client; Retainer signed - contingency fee 33.33%; Medical Authorizations signed |
| 2 | 5.16.17 | LJS | 8 | 7.5 | $300 | $2,250 | TPMB, LLC retained by Andrew Woods; Travel to meeting at client's house in Earlville, IL; Write-up case and interview client; Retainer signed - contingency fee 33.33%; Medical Authorizations signed |
| 3 | 5.16.17 | SPM | 1 | 1 | $500 | $500 | Opened file in Office and system |
| 4 | 5.16.17 | HAH | 1 | 1 | $300 | $300 | Opened file in Office and system |
| 5 | 5.17.17 | MAT | 0.75 | 0.75 | $500 | $375 | 96 Photos of the job obtained, printed and reviewed |
| 6 | 5.17.17 | SPM | 0.75 | 0.75 | $500 | $375 | 96 Photos of the job obtained, printed and reviewed |
| 7 | 5.18.17 | HAH | 0.75 | 0.75 | $300 | $225 | Prepared and sent Letter to Andrew Woods |
| 8 | 5.18.17 | MAT | 1.25 | 0 | $500 | $0 | Web research on Amazon |
| 9 | 5.18.17 | SPM | 1.25 | 0 | $500 | $0 | Web research on Amazon |
| 10 | 5.22.17 | SPM | 4.5 | 4.5 | $500 | $2,250 | Travel to meeting with Andrew Woods and his grandfather, Jack Keck, at Jack Keck's house in Yorkville, IL |
| 11 | 5.22.17 | MAT | 4.5 | 4.5 | $500 | $2,250 | Travel to meeting with Andrew Woods and his grandfather, Jack Keck, at Jack Keck's house in Yorkville, IL |
| 12 | 5.22.17 | BNP | 4.5 | 4.5 | $500 | $2,250 | Travel to meeting with Andrew Woods and his grandfather, Jack Keck, at Jack Keck's house in Yorkville, IL |
| 13 | 5.22.17 | SPM | 2 | 0 | $500 | $0 | SPM prepared a case status Memo (4pages) |
| 14 | 5.22.17 | HAH | 0.5 | 0.25 | $300 | $75 | Prepared and sent Letter of representation to Amazon IL |
| 15 | 5.22.17 | HAH | 0.5 | 0.25 | $300 | $75 | Prepared and sent Letter of representation to Washington State |
| 16 | 5.22.17 | HAH | 0.5 | 0.25 | $300 | $75 | Prepared and sent Letter of representation to Steel King |
| 17 | 5.23.17 | MAT | 1.25 | 1.25 | $500 | $625 | Investigation Report reviewed (report contained the following witnesses): Mike Johnson (identified as the other injured party), Stu Mosley, Adam Medlin, Randy Wilkerson, Dirk Enger (on the job and took photos), Jim Tucker, Frank Norman, John Coby |
| 18 | 5.23.17 | SPM | 1.25 | 1.25 | $500 | $625 | Investigation Report reviewed (report contained the following witnesses): Mike Johnson (identified as the other injured party), Stu Mosley, Adam Medlin, Randy Wilkerson, Dirk Enger (on the job and took photos), Jim Tucker, Frank Norman, John Coby |
| 19 | 5.25.17 | SPM | 0.25 | | $500 | $0 | Call from Corrine Sedgwick, received lien and to discuss case Claim #301-77940587 |
| 20 | 6.1.17 | MAT | 1 | 0.5 | $500 | $250 | MAT Memo to file RE: Meeting at Jack Keck's house in Yorkville, IL (1Page) |
| 21 | 6.2.17 | SPM | 0.5 | 0.25 | $300 | $75 | Email from SPM RE: Speaking to Andrew Woods on 6/2/17 |
| 22 | 6.5.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Letter from Corrine Rice Sedgwick Claims Management (4 pages) |
| 23 | 6.5.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Letter from Corrine Rice Sedgwick Claims Management (4 pages) |
| 24 | 6.5.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Fax from Copley Memorial Hospital |
| 25 | 6.5.17 | MAT | 0.125 | 0.125 | $500 | $63 | Received and reviewed Copley Memorial Hospital ER Bills |

| # | Date | | | | | | Description |
|---|---|---|---|---|---|---|---|
| 26 | 6.5.17 | SPM | 0.125 | 0.125 | $500 | $63 | Received and reviewed Copley Memorial Hospital ER Bills |
| 27 | 6.6.17 | MAT | 1.25 | 1.25 | $500 | $625 | Investigation Report reviewed (report contained the following witnesses): John Colby, Eric Carlin, Jose Aguire, Adam Medlin |
| 28 | 6.6.17 | SPM | 1.25 | 1.25 | $500 | $625 | Investigation Report reviewed (report contained the following witnesses): John Colby, Eric Carlin, Jose Aguire, Adam Medlin |
| 29 | 6.8.17 | MAT | 3 | 3 | $500 | $1,500 | Prepared Woods Complaint Final Draft |
| 30 | 6.8.17 | SPM | 3 | 3 | $500 | $1,500 | Prepared Woods Complaint Final Draft |
| 31 | 6.8.17 | MAT | 0.25 | 0.25 | $500 | $125 | Obtained and reviewed Instructions for Attorney completing Civil Cover Sheet Completed |
| 32 | 6.8.17 | SPM | 0.25 | 0.25 | $500 | $125 | Obtained and reviewed Instructions for Attorney completing Civil Cover sheet and Civil Cover Sheet Completed |
| 33 | 6.8.17 | SPM | 0.5 | 0.5 | $500 | $250 | Woods Complaint filed |
| 34 | 6.9.17 | MAT | 1.5 | 1.5 | $500 | $750 | Researched Identity of Defendants: Amazon.com LLL; Amazon.com LLC managers; Amazon.com Washington LLC; Duke Realty Corp; Duke Realty Service, LLC; Duke Realty Service, LLC Managers; Steel King Industries / Associates (from website); Steel King locations reviewed (from website); Steel King Industries, Inc. reviewed from the Wisconsin Department of Finance |
| 35 | 6.9.17 | SPM | 1.5 | 1.5 | $500 | $750 | Researched Identity of Defendants: Amazon.com LLL; Amazon.com LLC managers; Amazon.com Washington LLC; Duke Realty Corp; Duke Realty Service, LLC; Duke Realty Service, LLC Managers; Steel King Industries / Associates (from website); Steel King locations reviewed (from website); Steel King Industries, Inc. reviewed from the Wisconsin Department of Finance |
| 36 | 6.9.17 | SPM | 0.75 | 0.75 | $500 | $375 | Prepared and issued summons: Amazon, Duke, Steel King |
| 37 | 6.9.17 | SPM | 0.5 | 0.5 | $500 | $250 | Mandatory Initial Discovery Pilot (MIDP) Order and reviewed criteria |
| 38 | 6.9.17 | MAT | 0.5 | 0.5 | $500 | $250 | Obtained and reviewed Mandatory Initial Discovery Pilot Checklist (3 pages) |
| 39 | 6.9.17 | SPM | 0.5 | 0.5 | $500 | $250 | Obtained and reviewed Mandatory Initial Discovery Pilot Checklist (3 pages) |
| 40 | 6.9.19 | MAT | 0.25 | 0.25 | $500 | $125 | Obtained and reviewed Standing Order Regarding Mandatory Initial Discovery Pilot |
| 41 | 6.9.19 | SPM | 0.25 | 0.25 | $500 | $125 | Obtained and reviewed Standing Order Regarding Mandatory Initial Discovery Pilot |
| 42 | 6.9.17 | MAT | 0.125 | 0.125 | $500 | $63 | Obtained and reviewed Order entered to Amend Complaint to plead subject matter jurisdiction |
| 43 | 6.9.17 | SPM | 0.125 | 0.125 | $500 | $63 | Obtained and reviewed Order entered to Amend Complaint to plead subject matter jurisdiction |
| 44 | 6.9.17 | MAT | 3 | 1.5 | $500 | $750 | Researched and reviewed OSHA Standards: OSHA 3220 Warehousing Worker Safety Services (15 pages), OSHA 2236 Materials Handling and Storage (41 pages) |
| 45 | 6.10.17 | SPM | 1 | 0 | $500 | $0 | Reviewed RUSH Copley Emergency Room Records (39 pages) |
| 46 | 6.10.17 | SPM | 1 | 0 | $500 | $0 | Reviewed City of Aurora Fire Department EMT Records |
| 47 | 6.10.17 | MAT | 1 | 0.5 | $500 | $250 | Researched and reviewed Steel King "Built to Deliver / Designed to Perform" (12 pages) |
| 48 | 6.12.17 | MAT | 2.5 | 2.5 | $500 | $1,250 | Prepared Woods First Amended Complaint final Draft |
| 49 | 6.12.17 | SPM | 2.5 | 2.5 | $500 | $1,250 | Prepared Woods First Amended Complaint final Draft |

| # | Date | | | | | | | Description |
|---|---|---|---|---|---|---|---|---|
| 50 | 6.12.17 | MAT | 2 | 2 | 0 | $500 | $0 | Located, reviewed and downloaded Steel King Videos: "About Steel King Industries" 2:23; "Safety Systems" 1:23; "Time Lapse Installation" 1:24 |
| 51 | 6.12.17 | MAT | 1 | 1 | 0 | $500 | $0 | Investigation Report reviewed (report contained the following witnesses): Adam Medlin, Jerry Grygiel, Phil Piel, Brian Elliott |
| 52 | 6.12.17 | SPM | 1 | 1 | 0 | $500 | $0 | Investigation Report reviewed (report contained the following witnesses): Adam Medlin, Jerry Grygiel, Phil Piel, Brian Elliott |
| 53 | 6.13.17 | SPM | 0.5 | 0.5 | 0.5 | $500 | $250 | Woods First Amended Complaint filed; NOF Woods First Amended Complaint filed |
| 54 | 6.13.17 | SPM | 1 | 1 | 1 | $500 | $500 | John Pennell Private Investigator hired for Corporate service of Amazon LLC and given First Amended Complaint |
| 55 | 6.15.17 | MAT | 0.125 | 0.125 | 0.125 | $500 | $63 | Received and reviewed Docket Entry Rule 26F |
| 56 | 6.15.17 | SPM | 0.125 | 0.125 | 0.125 | $500 | $63 | Received and reviewed Docket Entry Rule 26F |
| 57 | 6.17.17 | MAT | 1 | 1 | 1 | $500 | $500 | Researched Duke Realty Corp Indianapolis |
| 58 | 6.17.17 | MAT | 1 | 1 | 1 | $500 | $500 | Web research on Amazon.comLLC 10:38am |
| 59 | 6.17.17 | MAT | 1 | 1 | 1 | $500 | $500 | Web research on Steel King 10:50am |
| 60 | 6.17.17 | MAT | 1 | 1 | 1 | $500 | $500 | Web research on Duke Realty 12:21pm |
| 61 | 6.17.17 | SPM | 0.75 | 0.75 | 0.75 | $500 | $375 | Obtained and reviewed Affidavit of Service Amazon LLC; NOF Affidavit of Service Amazon LLC |
| 62 | 6.19.17 | SPM | 0.5 | 0.5 | 0.5 | $500 | $250 | ATG Legal Service/Holland Shaf retained to serve Steel King in Stevens Point, WI |
| 63 | 6.22.17 | SPM | 0.5 | 0.5 | 0.5 | $500 | $250 | Obtained and reviewed Affidavit of Service on Steel King 6/20/17 |
| 64 | 6.23.17 | MAT | 1 | 1 | 1 | $500 | $500 | Investigation Report reviewed (report contained the following witnesses): Phil Piel, Jerry Grygiel, Brian Elliott |
| 65 | 6.23.17 | SPM | 1 | 1 | 1 | $500 | $500 | Investigation Report reviewed (report contained the following witnesses): Phil Piel, Jerry Grygiel, Brian Elliott |
| 66 | 6.26.17 | MAT | 0.5 | 0.5 | 0.5 | $500 | $250 | Received and reviewed Email from investigator about case |
| 67 | 6.26.17 | SPM | 0.5 | 0.5 | 0.5 | $500 | $250 | Received and reviewed Email from investigator about case |
| 68 | 6.29.17 | MAT | 0.25 | 0.25 | 0.25 | $500 | $125 | Received and reviewed Email from Phil Fluhr 4:04pm |
| 69 | 6.30.17 | MAT | 2 | 2 | 2 | $500 | $1,000 | Conference with Phil Fluhr attorney for Amazon; Received and reviewed Amazon Appearance of attorney Phil Fluhr filed; Received and reviewed Amazon Consent Motion for extension of time; Received and reviewed NOF Amazon Consent Motion for extension of time; Received and reviewed Amazon Appearance of attorney Kimberly Flanigan filed |
| 70 | 7.1.17 | MAT | 0.25 | 0.25 | 0.25 | $500 | $125 | Received and reviewed Amazon Consent Order |
| 71 | 7.5.17 | SPM | 2 | 2 | 2 | $500 | $1,000 | Retained Security & Investigation Specialists to serve Duke Realty; Received and reviewed Proof of service on Duke Realty; Prepared and filed NOF Proof of service Duke Realty |
| 72 | 7.8.17 | MAT | 0.5 | 0.5 | 0.5 | $500 | $250 | Received and reviewed Steel King Appearance of attorney Steve Mahoney filed; Received and reviewed Steel King Jury Demand filed |
| 73 | 7.11.17 | MAT | 0.125 | 0.125 | 0.125 | $500 | $63 | Reviewed Steel king Motion to Extend Time reviewed (1 page); NOF Steel king Motion to Extend Time |

| # | Date | | | | | | Description |
|---|---|---|---|---|---|---|---|
| 74 | 7.11.17 | SPM | 0.125 | 0.125 | $500 | $63 | Reviewed Steel king Motion to Extend Time reviewed (1 page); NOF Steel king Motion to Extend Time |
| 75 | 7.11.17 | MAT | 1 | 1 | $500 | $500 | Reviewed Duke Realty appearance of attorney Patrick Garvey filed; Conference with Patrick Garvey |
| 76 | 7.11.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed letter from Accident Fund Holdings, Inc. Lien /Subrogation agent for EZ Erectors, Inc. Kelly Drummeismith |
| 77 | 7.12.17 | MAT | 1.25 | 1.25 | $500 | $625 | Investigation Report reviewed (report contained the following witnesses): Jose Aguirre, Jim Tucker, Tom Wollenweber, Ken Beasley |
| 78 | 7.12.17 | SPM | 1.25 | 1.25 | $500 | $625 | Investigation Report reviewed (report contained the following witnesses): Jose Aguirre, Jim Tucker, Tom Wollenweber, Ken Beasley |
| 79 | 7.13.17 | MAT | 0.75 | 0.75 | $500 | $375 | Received and reviewed the instructions for initial Status Report; Prepared Draft Initial Status Report; Prepared Service list |
| 80 | 7.13.17 | SPM | 0.75 | 0.75 | $500 | $375 | Received and reviewed the instructions for initial Status Report; Prepared Draft Initial Status Report; Prepared Service list |
| 81 | 7.17.17 | MAT | 2.25 | 0 | $500 | $0 | Received and reviewed Development Agreement (12/5/16) between Duke Realty Limited Partnership and Amzaon.com.dedc.LLL (136 pages) |
| 82 | 7.17.17 | SPM | 2.25 | 0 | $500 | $0 | Received and reviewed Development Agreement (12/5/16) between Duke Realty Limited Partnership and Amzaon.com.dedc.LLL (136 pages) |
| 83 | 7.17.15 [sic] | MAT | 2 | 0 | $500 | $0 | Received and reviewed Lease Agreement between Duke Realty Limited Partnership and Amzaon.com.dedc.LLL (121 pages) |
| 84 | 7.17.15 [sic] | SPM | 2 | 0 | $500 | $0 | Received and reviewed Lease Agreement between Duke Realty Limited Partnership and Amzaon.com.dedc.LLL (121 pages) |
| 85 | 7.17.18 [sic] | MAT | 0.5 | 0 | $500 | $0 | Received and reviewed Amazon Documents: Amazon 188 Employee Statement Adam Medlin; Amazon 189 Chris Berardino Foreman's Report of injury Lakeside Adam Medlin; Amazon 190 Chris Berardino Foreman's Report of injury Lakeside Mike Johnson; Amazon 191 Chris Berardino Foreman's Report of injury Lakeside Andrew Woods; Amazon 192 Safety Meeting Sign-in 5/15/17 |
| 86 | 7.17.18 [sic] | SPM | 0.5 | 0 | $500 | $0 | Received and reviewed Amazon Documents: Amazon 188 Employee Statement Adam Medlin; Amazon 189 Chris Berardino Foreman's Report of injury Lakeside Adam Medlin; Amazon 190 Chris Berardino Foreman's Report of injury Lakeside Mike Johnson; Amazon 191 Chris Berardino Foreman's Report of injury Lakeside Andrew Woods; Amazon 192 Safety Meeting Sign-in 5/15/18 |
| 87 | 7.17.17 | MAT | 2 | 2 | $500 | $1,000 | Prepared for and attended Conference at TPMB with Patrick Garvey, Steve Mahoney (by phone) and Phil Fluhr Re: Initial Status Report |
| 88 | 7.17.17 | MAT | 0.25 | 0.25 | $500 | $125 | MAT Email to Patrick Garvey RE: Duke Realty 12:46pm |
| 89 | 7.17.17 | MAT | 0.25 | 0.25 | $500 | $125 | MAT Email to Mike Johnson's counsel RE: Initial Status Report, with draft copy of Woods Complaint and Draft Status Report |
| 90 | 7.17.17 | MAT | 1 | 0 | $500 | $0 | Web Research on Duke realty Limited Partnership 4:38pm |
| 91 | 7.18.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Motion to Extend time and conference with Phil Fluhr; Received and reviewed NOM Amazon Motion to Extend time |

| No. | Date | Initials | Hours | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 92 | 7.18.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Motion to Extend time and conference with Phil Fluhr; Received and reviewed NOM Amazon Motion to Extend time |
| 93 | 7.18.17 | MAT | 3.5 | 3.5 | $500 | $1,750 | Prepared Second Amended Complaint final Draft; Prepared Motion to file Second Amended Complaint final draft; Prepared Motion to file Second Amended Complaint filed; Prepared Consent Motion to file Second Amended Complaint; Prepared NOM Consent Motion to file Second Amended Complaint; Second Amended Complaint filed w/motion |
| 94 | 7.18.17 | SPM | 3.5 | 3.5 | $500 | $1,750 | Prepared Second Amended Complaint final Draft; Prepared Motion to file Second Amended Complaint final draft; Prepared Motion to file Second Amended Complaint filed; Prepared Consent Motion to file Second Amended Complaint; Prepared NOM Consent Motion to file Second Amended Complaint; Second Amended Complaint filed w/motion |
| 95 | 7.18.17 | MAT | 1.5 | 1.5 | $500 | $750 | Prepared Initial Rule 16(b) and 26(f) Joint Status Report by MAT and SPM and filed it |
| 96 | 7.18.17 | SPM | 1.5 | 1.5 | $500 | $750 | Prepared Initial Rule 16(b) and 26(f) Joint Status Report by MAT and SPM and filed it |
| 97 | 7.18.17 | SPM | 0.25 | 0.25 | $500 | $125 | Prepared NOF Initial Rule 16(b) and 26(f) Joint Status Report filed |
| 98 | 7.19.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Minute Order – 7.25.17 Status Hearing and leave granted to file Second Amended Complaint; Second Amended Complaint filed with the Court (16 pages); Prepared NOF Second Amended Complaint |
| 99 | 7.19.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Minute Order – 7.25.17 Status Hearing and leave granted to file Second Amended Complaint; Second Amended Complaint filed with the Court (16 pages); Prepared NOF Second Amended Complaint |
| 100 | 7.19.17 | MAT | 0.25 | 0.25 | $500 | $125 | Reviewed Initial Status Report Amendment |
| 101 | 7.19.17 | SPM | 0.25 | 0.25 | $500 | $125 | Reviewed Initial Status Report Amendment |
| 102 | 7.19.17 | MAT | 0.25 | 0.25 | $500 | $125 | Reviewed Form "Report of Parties Planning Meeting" pursuant to Fed. R. Civ. P. 26(f) (2 pages) |
| 103 | 7.19.17 | SPM | 0.25 | 0.25 | $500 | $125 | Reviewed Form "Report of Parties Planning Meeting" pursuant to Fed. R. Civ. P. 26(f) (2 pages) |
| 104 | 7.24.17 | MAT | 1 | 1 | $500 | $500 | Investigation Report reviewed (report contained the following witnesses): Jim Tucker, Fran Norman, Tom Cambier, Kyle Steima |
| 105 | 7.24.17 | SPM | 1 | 1 | $500 | $500 | Investigation Report reviewed (report contained the following witnesses): Jim Tucker, Fran Norman, Tom Cambier, Kyle Steima |
| 106 | 7.25.17 | MAT | 2 | 2 | $500 | $1,000 | Prepared for and attended the Status Hearing before Judge St. Eve |
| 107 | 7.25.17 | MAT | 0.125 | 0.125 | $500 | $63 | Received and reviewed Minute Order entered from the 7.25.17 Status Hearing |
| 108 | 7.25.17 | SPM | 0.125 | 0.125 | $500 | $63 | Received and reviewed Minute Order entered from the 7.25.17 Status Hearing |
| 109 | 7.26.17 | MAT | 0.125 | 0.125 | $500 | $63 | Received and reviewed Judge St. Eve recusal |
| 110 | 7.26.17 | SPM | 0.125 | 0.125 | $500 | $63 | Received and reviewed Judge St. Eve recusal |
| 111 | 7.26.17 | MAT | 0.125 | 0.125 | $500 | $63 | Received and reviewed Order entered striking the 9.18.17 status |
| 112 | 7.26.17 | SPM | 0.125 | 0.125 | $500 | $63 | Received and reviewed Order entered striking the 9.18.17 status |
| 113 | 7.26.17 | MAT | 0.125 | 0.125 | $500 | $63 | Received and reviewed Judge Castillo docket entry setting 8.16.17 Status |
| 114 | 7.26.17 | SPM | 0.125 | 0.125 | $500 | $63 | Received and reviewed Judge Castillo docket entry setting 8.16.17 Status |

| # | Date | | | | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 115 | 8.7.17 | MAT | 1.5 | 1.5 | $500 | $750 | Received and reviewed Amazon Answer and Aff Defs to 2nd Amended Complaint 22 pages, 5 Affirmative Defenses filed and downloaded; Received and reviewed Duke Answer and Aff Defs to 2nd Amended Complaint 16 pages, 8 Affirmative Defenses filed and downloaded; Received and reviewed Steel King Answer and Aff Defs to 2nd Amended Complaint 22 pages, 3 Affirmative Defenses filed and downloaded |
| 116 | 8.14.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Duke Initial Status |
| 117 | 8.14.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Duke Initial Status |
| 118 | 8.16.17 | MAT | 0.5 | 0.5 | $500 | $250 | Obtained, printed and reviewed Judge Castillo's Rules, Standing Orders and Court Protocol from Web |
| 119 | 8.16.17 | SPM | 0.5 | 0.5 | $500 | $250 | Obtained, printed and reviewed Judge Castillo's Rules, Standing Orders and Court Protocol from Web |
| 120 | 8.16.17 | SPM | 2 | 2 | $500 | $1,000 | Prepared for and attended the Status Hearing before Judge Castillo |
| 121 | 8.16.17 | MAT | 0.125 | 0.125 | $500 | $63 | Reviewed Docket entry - Next Status 11/9/17, Rule 26(a)(1) disclosures by 11/1/17 |
| 122 | 8.16.17 | SPM | 0.125 | 0.125 | $500 | $63 | Reviewed Docket entry - Minute Order - Next Status 11/9/17, Rule 26(a)(1) disclosures by 11/1/18 |
| 123 | 8.18.17 | MAT | 1 | 1 | $500 | $500 | Received and reviewed Steel King Complaint for Contribution/counterclaim v. Amazon and Duke |
| 124 | 8.18.17 | MAT | 3 | 3 | $500 | $1,500 | Prepared Plaintiff Reply to Aff Defs Duke and filed; Prepared Plaintiff Reply to Aff Defs Steel King and filed; Prepared Plaintiff Reply to Aff Defs Amzon and filed |
| 125 | 8.9.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed First Amended Joint Status Report |
| 126 | 8.9.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed First Amended Joint Status Report |
| 127 | 8.10.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Duke Realty Initial Status Report reviewed (Patrick Garvey) |
| 128 | 8.10.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Duke Realty Initial Status Report reviewed (Patrick Garvey) |
| 129 | 8.16.17 | MAT | 0.75 | 0.75 | $500 | $375 | Investigation Report reviewed (report contained the following witnesses): Tom Cambier, Kyle Stelma |
| 130 | 8.16.17 | SPM | 0.75 | 0.75 | $500 | $375 | Investigation Report reviewed (report contained the following witnesses): Tom Cambier, Kyle Stelma |
| 131 | 8.22.217 | MAT | 1.5 | 1.5 | $500 | $750 | Received and reviewed Duke Realty Complaint for Contribution/counterclaim v. Steel King and Amazon |
| 132 | 8.23.17 | MAT | 0.75 | 0.75 | $500 | $375 | Reviewed Prasan Atluri, MD / Hand to Shoulder Associates Report (8 pages) |
| 133 | 8.23.17 | SPM | 0.75 | 0.75 | $500 | $375 | Reviewed Prasan Atluri, MD / Hand to Shoulder Associates Report (8 pages) |
| 134 | 8.23.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Cross-claim |
| 135 | 8.23.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Cross-claim |
| 136 | 8.23.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Contribution Action v. Lakeside RackInstallers |
| 137 | 8.23.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Contribution Action v. Lakeside RackInstallers |
| 138 | 8.30.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Duke 3rd Party Complaint v. Lakeside Rack installers |
| 139 | 8.30.17 | SPM | 0.5 | 0.5 | $500 | $250 | Received and reviewed Duke 3rd Party Complaint v. Lakeside Rack installers |
| 140 | 9.1.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Joshua M. Alpert / Midwest Bone & Joint institute Records 8/30/17 Note return to work with restrictions |

| # | Date | | | | | | Description |
|---|---|---|---|---|---|---|---|
| 141 | 9.1.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Joshua M. Alpert / Midwest Bone & Joint institute Records 8/30/17 Note return to work with restrictions |
| 142 | 9.5.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Duke Answer to Steel King |
| 143 | 9.18.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Answer to Duke Counterclaim |
| 144 | 9.18.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Amazon Answer to Steel King Counterclaim |
| 145 | 9.29.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Steel King Motion to file Answer |
| 146 | 10.4.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Order Granting Steel King Answer to Counterclaim |
| 147 | 10.5.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Steel King Answer to Duke Cross-claim |
| 148 | 10.5.17 | MAT | 0.5 | 0.5 | $500 | $250 | Received and reviewed Steel King Answer to Amazon Cross-claim |
| 149 | 10.12.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Joshua M. Alpert / Midwest Bone & Joint institute Records 10/11/17 Note (2 pages) |
| 150 | 10.12.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Joshua M. Alpert / Midwest Bone & Joint institute Records 10/11/17 Note (2 pages) |
| 151 | 10.25.17 | MAT | 0.125 | 0.125 | $500 | $63 | Received and reviewed Amazon Motion to Substitute Counsel |
| 152 | 10.25.17 | SPM | 0.125 | 0.125 | $500 | $63 | Received and reviewed Amazon Motion to Substitute Counsel |
| 153 | 10.25.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Ordered Aurora Fire Department Records from Record Copy Service |
| 154 | 10.26.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Amazon Substitution of Attorneys; Received and reviewed Amazon Motion for Substitution of Attorneys |
| 155 | 10.26.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Amazon Substitution of Attorneys; Received and reviewed Amazon Motion for Substitution of Attorneys |
| 156 | 10.26.17 | MAT | 0.125 | 0.125 | $500 | $63 | Conference with Kyle Blair and Mike Mullen to extend Amazon time to file Rule 26(a)(1) disclosures |
| 157 | 10.26.17 | SPM | 0.125 | 0.125 | $500 | $63 | Conference with Kyle Blair and Mike Mullen to extend Amazon time to file Rule 26(a)(1) disclosures |
| 158 | 10.27.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Amazon Motion to Extend time to file Rule 26(a)(1) Disclosures; Received and reviewed NOM Amazon Motion to Extend time to file Rule 26(a)(1) Disclosures |
| 159 | 10.27.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Amazon Motion to Extend time to file Rule 26(a)(1) Disclosures; Received and reviewed NOM Amazon Motion to Extend time to file Rule 26(a)(1) Disclosures |
| 160 | 10.30.17 | MAT | 0.25 | 0.25 | $500 | $125 | Received and reviewed Order to extend Rule 26(a)(1) disclosures granted until 11/22/17, the 11/9/17 status stricken and next status set for 11/28/2017 |
| 161 | 10.30.17 | SPM | 0.25 | 0.25 | $500 | $125 | Received and reviewed Order to extend Rule 26(a)(1) disclosures granted until 11/22/17, the 11/9/17 status stricken and next status set for 11/28/2018 |
| 162 | 10.30.17 | SPM | 0.25 | 0.25 | $500 | $125 | SPM letter to Midwest Bone & Joint Institute requesting records |
| 163 | 10.30.17 | SPM | 0.25 | 0.25 | $500 | $125 | SPM letter to City of Aurora requesting records |
| 164 | 10.31.17 | SPM | 0.25 | 0.25 | $500 | $125 | Email from SPM RE: speaking to Andrew Woods on 10/31/17 |
| 165 | 10.31.17 | MAT | 0.5 | 0.5 | $500 | $250 | Reviewed Joshua M. Alpert / Midwest Bone & Joint institute Records 21 pages |
| 166 | 10.31.17 | SPM | 0.5 | 0.5 | $500 | $250 | Reviewed Joshua M. Alpert / Midwest Bone & Joint institute Records 21 pages |

| # | Date | | | | | | | Description |
|---|---|---|---|---|---|---|---|---|
| 167 | 10.31.17 | MAT | 0.5 | 0.5 | 0.5 | $500 | $250 | Reviewed Richard K. Thomas, MD / Northwestern Medicine Report (3 pages) |
| 168 | 10.31.17 | SPM | 0.5 | 0.5 | 0.5 | $500 | $250 | Reviewed Richard K. Thomas, MD / Northwestern Medicine Report (3 pages) |
| 169 | 10.31.17 through 11.16.17 | MAT | 4 | 4 | 0 | $500 | $0 | MAT and SPM Worked on the Rule 26(a)(1) Initial Disclosure and Rule 26(a)(1) Documents |
| 170 | 10.31.17 through 11.16.17 | SPM | 4 | 4 | 0 | $500 | $0 | MAT and SPM Worked on the Rule 26(a)(1) Initial Disclosure and Rule 26(a)(1) Documents |
| 171 | 11.13.17 through 11.16.17 | MAT | 6 | 6 | 6 | $500 | $3,000 | Filed, prepared and served: Interrogatories and Request to Produce to Amazon; Interrogatories and Request to Produce to Duke Realty Service; Interrogatories and Request to Produce to Steel King |
| 172 | 11.13.17 through 11.16.17 | SPM | 6 | 6 | 6 | $500 | $3,000 | Filed, prepared and served: Interrogatories and Request to Produce to Amazon; Interrogatories and Request to Produce to Duke Realty Service; Interrogatories and Request to Produce to Steel King |
| 173 | 11.16.17 | MAT | 1 | 1 | 0 | $500 | $0 | Received and reviewed Amazon Rule 26(a)(1) disclosures |
| 174 | 11.16.17 | SPM | 1 | 1 | 0 | $500 | $0 | Received and reviewed Amazon Rule 26(a)(1) disclosures |
| 175 | 11.16.17 | MAT | 3 | 3 | 0 | $500 | $0 | Received and reviewed Amazon Fulfillment Services, Inc. and Steel King Industries Master Purchase Agreement (315 pages) |
| 176 | 11.16.17 | SPM | 3 | 3 | 0 | $500 | $0 | Received and reviewed Amazon Fulfillment Services, Inc. and Steel King Industries Master Purchase Agreement (315 pages) |
| 177 | 11.22.17 | MAT | 0.5 | 0.5 | 0 | $500 | $0 | Received and reviewed Steel King Rule 21(a)(1) disclosure |
| 178 | 11.22.17 | SPM | 0.5 | 0.5 | 0 | $500 | $0 | Received and reviewed Steel King Rule 21(a)(1) disclosure |
| 179 | 11.22.17 | MAT | 0.5 | 0.5 | 0 | $500 | $0 | Received and reviewed d[sic] Duke Realty Rule 21(a)(1) disclosure |
| 180 | 11.22.17 | SPM | 0.5 | 0.5 | 0 | $500 | $0 | Received and reviewed d[sic] Duke Realty Rule 21(a)(1) disclosure |
| 181 | 11.28.17 | MAT | 3 | 3 | 0 | $500 | $0 | MAT prepared for and attended the status before Judge Castillo and requested the Court to vet the facts regarding TPMB, LLC's discharge and requested the Court would not hear the dispute and allowed TPMB, LLC to withdraw and allowed Anesi Ozmon to appear and ordered TPMB, LLC to withdraw |
| 182 | 12.4.17 | MAT | 0.75 | 0.75 | 0.75 | $500 | $375 | Prepared and filed TPMB, LLC's Motion to withdraw pursuant to Court Order |
| 183 | 12.4.17 | SPM | 0.75 | 0.75 | 0.75 | $500 | $375 | Prepared and filed TPMB, LLC's Motion to withdraw pursuant to Court Order |
| 184 | 12.11.17 | MAT | 0.125 | 0.125 | 0 | $500 | $0 | Received and reviewed Order entered granting MAT, SPM and TPMB, LLC to withdraw |
| 185 | 12.11.17 | SPM | 0.125 | 0.125 | 0 | $500 | $0 | Received and reviewed Order entered granting MAT, SPM and TPMB, LLC to withdraw |

Total: $69,825